## LEINKAUF & STRAUSS *v.* LILLIE J. BARNES.

1. HUSBAND AND WIFE.  *Means of wife used in business.    Code of 1880, § 1177.*
    Among other things, this section provides that, " it shall not be lawful for the husband to rent the wife's plantation, houses, horses, mules, wagons, carts, or other implements, and with them, or any of her means, to operate and carry on business in his own name or on his own account. But all business done with the means of the wife by the husband shall be deemed and held to be on her account and for her use, and by her husband as her agent and manager in business, as to all persons dealing with him without notice, unless the contract between the husband and wife which changes this relation shall be evidenced by writing," duly filed for record. This section does not apply so as to make the wife liable to creditors as an undisclosed principal where her *money* only is used by the husband in his business.

2. CONSTRUCTION OF STATUTES.    *Words ejusdem generis.*
    When special words are used in a statute, followed by terms of more general import, the general words are to be limited to matters *ejusdem generis* with the special words, unless a contrary intention appears. Construing this section (1177, code of 1880), with the context, the words " *her means* " and " *any of her means* " do not include money, for this is not *ejusdem generis* with the words, plantation, horses, wagons, other implements, etc., used in the preceding part of the section.

FROM the circuit court of Noxubee county.

HON. S. H. TERRAL, Judge.

The opinion states the case.

*Jno. E. Madison,* for appellants.

Section 1177 of the code is applicable to other business as well as farming, and the words, " or any of her means," are not to be

restricted to things of the same character as those enumerated in the preceding part of the section. It might be plausible to contend that this clause and the words, " and to operate and carry on business in his own name or on his own account," refer to the preceding enumeration, but for the concluding language : "But *all business* done with the *means of the wife* by the husband, shall be deemed and held to be on her account," etc. These expressions are too general to be restricted by construction to the wife's plantation and the personal property thereon. *The intention to include every business is too manifest.*

The evil intended to be remedied is the one arising in the case at bar. In case the husband becomes involved, he easily sets up the relation of debtor and creditor between his wife and himself and sells out to her or prefers her in an assignment. In the case of *Porter & McRae* v. *Staten,* this court uses the following language :

" By fair and necessary implication the statute secures to creditors the right to hold the wife to answer for all debts contracted in a business conducted by her husband with her means in all cases in which there is not a recorded contract or notice to the creditor." 64 Miss. 421. This and the plain language of § 1177 places the question in this case beyond the range of debate.

The court below held that the section was applicable to the business of merchandising only when the wife actually furnished the *goods to be sold.* The error is in assuming that the business of a merchant is only to *sell* goods. Is it not a part of his business to buy, as well as sell? The wholesale dealer, as in this case, generally has a very lively impression of the *business* of a merchant in buying goods. Is not a merchant *engaged in business* when using twenty-five hundred dollars of his wife's money in buying five thousand dollars worth of goods, one half cash ?

The allegations of the declaration are full and specific, and make a clear case of liability against the wife under the statute. It was error to sustain the demurrer.

*Bogle & Bogle,* for appellee.

It is not claimed that the wife owned any of the property embarked in the business, or that she was an undisclosed principal in

fact; but it is insisted that the statute operates to make her the principal, against her will, and against her consent, simply because she loaned her husband money which was used in his business. We seriously question the power of the legislature to fasten on the wife liability for the debts of her husband under such circumstances; but, whether such power exists or not, we think we are entirely safe in saying it has never been exercised, and never will be. Such a law would be pure confiscation.

Prior to the code of 1880, two evils existed which the legislature attempted to remedy. One was where a merchant, doing business apparently with his own property and on his own account, obtained credit, and afterward, becoming involved in debt, a third party turned up claiming the property, thus defeating creditors. This was attempted to be cured by § 1300. The other evil was where the wife owned a separate estate, managed by the husband, and when debts, contracted for the estate, became embarrassing, it turned out that the husband had rented the property, thus shifting the debts to the insolvent husband. Section 1177 was intended to prevent this. The first mentioned section applies to merchants and traders, and where the use of the property consists in its consumption, such as merchandise. There is no record showing the title, and, therefore, the law conclusively presumes the possessor is owner and makes the property liable for his debts. Section 1177 applies to that class of property where the *corpus* is not consumed by the use, but an income arises out of which debts are usually paid. The records show the title, and the law fixes liability on the owner for the debts contracted for the benefit of the property. It is impossible, however, for third persons to know whether the possession of the husband is for his own benefit or in right of his wife, and, therefore, this section was intended to make his possession of her property her possession, and his acts in reference to it her acts, but it is confined to property.

These two sections of the code were intended to apply to different classes of cases; but, if the construction contended for by appellants shall prevail, then we have both sections applying to the same class of cases, and with conflicting results. Here § 1300

conclusively fixes ownership of the goods in the husband, and makes them liable for his debts; while § 1177, if applicable, makes the business that of the wife, and makes her liable for the debts.

Under the former code the wife was liable for plantation supplies, but this liability could be evaded by proof that the husband had rented the plantation for that year, and hence § 1177 was enacted to bring forward the old law, and to prevent such renting, unless by writing duly recorded.

In this case the husband owned the business. When he borrowed the two thousand seven hundred and fifty dollars it became *his* money, and he was debtor, not agent. The statute does not refer to money. " It shall not be lawful for the husband to rent the wife's plantation, houses, horses," etc.

The general term, " any means," following the specific enumeration, applies to property *ejusdem generis* with that enumerated. *Matter of Hermance*, 71 N. Y. 487 ; *Hawkins* v. *R. R. Co.*, 17 Mich. 62 ; Bish. on Con. 409.

If a wife lends her husband ten dollars to pay some small bill for merchandise, is she thereby made liable for ten thousand dollars which he subsequently owes in his business? Such a proposition is absurd. Suppose he collects money for her, and uses it in his business, without her knowledge, does this statute make him her agent, instead of debtor, and render her liable for all debts contracted in his business? Is it possible that in this state, where the wife is supposed to be relieved of all disabilities of coverture, she is so situated that the husband may not only squander her money, but, even against her consent, impose upon her liability for his debts? If the confidence of the wife in lending her money to the husband, or his use of it, without her knowledge, in his own ventures, makes her liable for all his debts, it ought to be plainly so " nominated " in the law.

The reasoning of this court in *Porter & McRae* v. *Staten*, 64 Miss. 421, agrees with the views we have expressed. It is clearly indicated there that the liability of the wife rests upon her ownership of the *property* for the benefit of which the debt was con-

tracted.   Here the wife had no property, but only a debt against her husband for the money.

COOPER, J., delivered the opinion of the court.

This appeal is from the judgment of the circuit court sustaining a demurrer to the declaration.   The facts stated are, that W. O. Barnes, the husband of appellee, was engaged in transacting a mercantile business in his own name, and in the course of such business contracted the debt sued on with the plaintiffs; that the appellee was the owner of a certain sum of money, to wit, the sum of two thousand seven hundred and fifty dollars, which sum her said husband used and employed in the said business by him transacted; that plaintiffs had no notice of any contract or agreement between the husband and wife by which the money of the wife was to be used in the business of the husband, wherefore and by virtue of the statute the business so transacted by the husband in his own name with the means of the wife, was as to plaintiffs to be held and considered as the business of the wife transacted by the husband as her agent, by reason of which the appellee became and was liable to pay to plaintiffs the demand sued on.   The single question presented is whether the business thus transacted by the husband, was by reason of the investment of the wife's money therein, the business of the wife as to creditors who dealt with the husband in ignorance of the facts, and this question is determinable by a construction of § 1177, of the code of 1880.   That section is as follows:

"Husband and wife shall not contract with each other, so as to entitle the one to claim or receive any compensation from the other for work and labor, and any contract between them whereby one shall be entitled to, or shall receive compensation from the other for services rendered, shall be utterly void; and it shall not be lawful for the husband to rent the wife's plantation, houses, horses, mules, wagons, carts, or other implements, and with them, or any of her means, to operate and carry on business in his own name or on his own account, but, all business done with the means of the wife by the husband shall be deemed and held to be on her account

and for her use, and by her husband as her agent and manager in business, as to all persons dealing with him without notice, unless the contract between the husband and wife which changes this relation, shall be evidenced by writing, subscribed by them, duly acknowledged, and filed with the chancery clerk of the county where such business may be done, to be recorded as other instruments are recorded therein."

The question is whether the money of the wife used in a mercantile business, is " her means" within the meaning of that term as used in the section noted, and renders the wife liable as an undisclosed principal as to all creditors of the husband, who in the absence of a written recorded contract, have dealt with him without notice of the facts.

The question involved is not free from difficulty, but upon careful and repeated considerations of the statute we are led to the conclusion that it is not applicable to the case as stated.

The words " any of her means " are certainly broad enough to include the money of the wife, and but for the context by which their meaning is restrained it is manifest that such should be their construction. But looking to the whole section we discover that the legislature was dealing with a condition of things under which by secret contracts between husband and wife creditors were defrauded in the collection of their demands. The first matter to which attention was directed was that of contracts between husband and wife by which one of them could claim as against the creditors of the other compensation out of the estate of the debtor for services performed. This evil found its most common illustration in cases where the husband or the wife being owner of crops was pursued by a creditor, and the wife or the husband, as the case might be, would interpose a laborer's claim and consequent lien upon the property sought to be subjected to execution. This evil was radically cured by declaring invalid all claims for compensation for labor. The next evil most common of occurrence was that arising from the renting by the husband of the wife's farm, and conducting business with it, presumably as her representative. If the business proved to be profitable the world heard nothing of the

contract by which the profits passed to the husband, and usually if an attempt to subject it to his debts was made, the wife interposed a claim to it as produced on her land with her teams, implements, and supplies.    But if misfortune followed, the creditor who had dealt with the husband, believing him to be, as appearances indicated, the mere agent and manager of the wife's estate, found that he had unwittingly given credit to a principal, insolvent in estate, and whose sole care for the future would be to devote his energies to the cultivation of the wife's estate.    The second clause of the statute begins by enumerating the plantation, houses, horses, mules, wagons, carts, and implements of the wife as things which the husband should not rent from the wife and conduct business therewith in his own name, except by virtue of a written contract, indicating thereby that the attention of the legislature was directed principally to the evils that arose from the business conducted by the use of such property, and then broadens into the terms " or any of her means."

It is a well settled rule of construction, that where special words are used, and they are followed by words of more general import, the general words are to be limited to matters *ejusdem generis* with the special words, unless an intention may be found to extend their meaning.    This rule, of course, excludes the suggestion that the mere use of general words is sufficient to indicate a purpose to include matters not *ejusdem generis*.    It is but the application of a principle that governs men in their usual intercourse, and applies language to the subject with which the speaker is dealing, and limits or expands the words used to accord with his understanding and intention.    We find neither in the subject matter, nor in the other words of the statute, anything indicating a purpose to include within the import of the words, " any of her means," property, other than that of a visible, tangible character, the possession of which is indicative of ownership, and calculated to invite the public to deal with the possessor as owner, and to mislead it to its injury, if the truth be found to be otherwise.

On the contrary, the language of the whole section is peculiarly appropriate to visible property, and unless money is included in the

words " her means," there are none in which it may be found. The business is not declared to be that of the wife as between herself and her husband, but is only such " as to all persons dealing with him without notice ;" that is, persons who in the view of the legislature may be misled by seeing the husband engaged in the management of his wife's property, property known to be hers by the fact of its possession by her, and of her claim to it.   And then again, if the " contract " by which the relation or principal and agent is changed is written, acknowledged, and recorded, the statute does not have application.   The word contract is a very proper one, to be used if it has relation to the hiring of personalty, or the leasing of a farm or house, but is not suggestive of one by which a loan of money is made; at least it would have been natural if it had been intended to require such contract as that to be in writing, to have added words indicating such purpose.   This section (1177) relates exclusively to cases in which the husband transacts business in his own name, with property which, though used in the business, continues throughout the property of the wife.  But it was thought that this provision might not meet the whole evil, and that by secret transfers of ownership of the property between husband and wife, it would be difficult for third persons to know in whom the title really was vested.  To meet this condition of things, the next section (1178) declared that " no transfer of goods or chattels or lands, between husband and wife, shall be valid as against any third person, unless such transfer or conveyance be in writing, and acknowledged and filed for record, as a mortgage or deed of trust of such property is required to be filed for record, and, in such cases, possession of the property shall not be equivalent to filing the writing for record, but, to affect third persons, such writing must be filed for record."

The two sections, we think, have reference to the same character of property, the first dealing with those cases in which the mere possession or use is or may be sought to be changed by secret contracts, the other with those in which the title itself may be transferred.   The " goods and chattels " of § 1178 manifestly do not include money, and the words, we think, in this section have

---
---

reference to the same things as are included in the words "any of her means" in § 1177.

The same result will be reached by a rigid interpretation of the language of § 1177 alone. This section does not prevent the husband from transacting business in his own name and on his own account with property derived from the wife. It applies only where the business is conducted with the property of the wife, property which remains hers, though used in the business. The only property which by the language of the act the husband is prohibited from renting or hiring from the wife is "the plantation, houses, horses, mules, wagons, carts, or other implements." Borrowing of money is not prohibited, but if the money of the wife is borrowed by the husband, it is no longer hers, but his, and the business transacted with it, is not transacted with her means, but with his own, derived from the contract with the wife it is true, but by means of a transaction not forbidden by the language of the statute.

It may be added that a construction by which the words "any of her means" should be held to include everything, whether of a visible and tangible, or of an invisible character, would practically deprive the preceding words of all effect, for it would be useless to specify certain things as to which the statute would apply, if it was intended that it should apply to all other things, whether *ejusdem generis*, or of a totally distinct character.

The only remaining objection which it seems can be urged to the view we have taken is, that a part of the general evil at which the statute is aimed may be left without correction. To this we reply, that by § 1300, a part of the same code, protection is afforded to creditors of all mercantile establishments, in which the business is transacted by one as the agent of an undisclosed principal. Under the two sections, there is but little danger that any serious evil of the class aimed at will be left without remedy.

*The judgment is affirmed.*