## C. N. Hollerich, Executor of Last Will and Testament of Pena Gronbach, Deceased et al., Appellants, v. George Gronbach et al., Appellees.

### Gen. No. 10,421.

Opinion filed October 7, 1950. Rehearing denied February 8, 1951. Released for publication February 12, 1951.

J. D. HURLEY and MALONE & HERBOLSHEIMER, all of La Salle, and PAUL D. PERONA, of Spring Valley, for appellants.

WILSON, WILSON & RAINEY and TRIMBLE & TRIMBLE, all of Princeton, for appellees; WM. M. WILSON, of Princeton, Guardian *ad litem*.

MR. JUSTICE DOVE delivered the opinion of the court.

On April 1, 1926, Henry Gronbach died testate leaving him surviving his widow, Pena Gronbach, but no child or children or descendants of any child or children. His will was duly admitted to probate and his estate fully administered in the county court of Bureau county. The first clause of his will directed that all his just debts and funeral expenses be paid. By the second clause, he bequeathed all his personal property and effects of every kind and nature to his wife absolutely and forever. The third and fourth clauses of his will are as follows, *viz:*

"Third, I give, devise and bequeath all of my real property wheresoever the same may be situated, whether owned by me now or acquired by me hereafter, to my beloved wife, Pena Gronbach, for and during the term of her natural life, together with the right

to use and enjoy the same and the rents, issues and profits thereof; together with unlimited discretionary power to sell and dispose of all or any part of said property absolutely, at such time or times, and upon such terms as she shall deem advisable, and to convey the same by absolute conveyance in fee simple; as well as unlimited discretionary power to encumber all or any part of said property;

"Fourth, Upon the death of my said wife, all of my said real estate, which she has not sold and disposed of, pursuant to the authority given her in the foregoing clause of this will, I give, devise and bequeath as follows, to-wit: an undivided one-half thereof to the following named nephews and nieces (being the children of my brother George Gronbach), to-wit: Henry Gronbach, George Gronbach, Fred Gronbach, Edward Gronbach, Pena Gronbach Decker, Gertrude McKee and Lottie Gronbach, in equal shares, to-wit, an undivided one-seventh part of said undivided one-half to each, absolutely and forever; and the remaining one-half of said real estate to Darlene Goering, niece of my wife and the following named second cousins of my wife, to-wit, Howard Scott, Dorothy Scott, Gilbert Scott, David Kippling, Kenneth Kippling, Alice Halte and Ferdinand Halte, in equal shares, to-wit, an undivided one-eighth part of said undivided one-half to each, absolutely and forever."

On October 24, 1946, Pena Gronbach conveyed by her deed to Barney Cyrus and Frank J. Cyrus all of the real estate owned by her deceased husband at the time of his death. The consideration for said conveyance was $30,000, of which $12,000 was paid in cash and the balance of the purchase price was evidenced by a note for $18,000 the payment of which was secured by a trust deed on said property. This note was dated October 24, 1946, and was due on or before March 1,

1950. The purchasers of the land, however, reserved the right to pay $100 or any multiple thereof on March 1, 1947, or upon any interest paying date thereafter.

Pena Gronbach died testate on January 9, 1947. Her will was duly admitted to probate, and appellant, JUDGE C. N. HOLLERICH, was appointed executor of her estate which is in the process of administration. Subsequently the purchasers of the real estate paid to JUDGE HOLLERICH, as executor, the note of $18,000 and the trust deed securing the payment of the same was released of record.

By the provisions of the will of Pena Gronbach, after directing that all her debts and funeral expenses be paid and after making a number of specific bequests, the testator gave, devised and bequeathed all of the rest, residue and remainder of her property to La Salle National Bank and Trust Company, as trustee, with authority to manage and care for the real estate and to hold and invest and reinvest the personal property for the benefit of Betty Halte, daughter of her cousin, Albert Halte. The trust was to be terminated upon the marriage or death of Betty Halte and the net proceeds thereof were to be paid to Betty Halte, if living, or if deceased, then to her then surviving brothers and sisters.

An August 12, 1947, the instant complaint was filed seeking a construction of the third and fourth clauses of the Henry Gronbach will and praying for a decree finding that Pena Gronbach had full power to convey the real estate described in the complaint to Barney Cyrus and Frank J. Cyrus; that the proceeds of the sale, both cash and the note secured by the trust deed, became her absolute and individual property and that upon her death the proceeds of said sale which remained in her hands became assets of her estate and that none of the devisees named in the fourth para-

graph of the will of Henry Gronbach take anything whatsoever under the provisions of paragraphs three and four of said will. On April 12, 1949, an amendment to the complaint was filed by leave of court, adding an alternative prayer for relief to the effect that the court decree that the proceeds arising from the sale of the real estate described in the complaint or so much of the proceeds as remained in the hands of Pena Gronbach, at the time of her death, became, upon her death, intestate personal property of the estate of Henry Gronbach, deceased.

La Salle National Bank and Trust Co., trustee for Betty Halte, and Betty Halte, residuary legatee and devisee under the will of Pena Gronbach, answered admitting all of the allegations of the complaint and joined in the prayer thereof for judgment. The nieces and nephews of Henry Gronbach, named in the fourth paragraph of his will, answered claiming that upon the sale of the real estate, the proceeds thereof became substituted for said real estate and stood in place of it; that when Pena Gronbach sold and disposed of the real estate described in the complaint, she became entitled to the income of and interest on the sums of money received therefor; that she became entitled to only the life use of the purchase price and became the trustee of said funds for the benefit of these defendants; that upon her death her executor became such trustee of said funds so received by her and of the principal payments made by the purchasers of said real estate after her death, and that said payments for said real estate can be traced and identified in the hands of Pena Gronbach and her executor.

Replies to this answer were filed and the issues made by the pleadings were heard by the chancellor resulting in a decree finding that under and by virtue of the third paragraph of the last will of Henry Gron-

bach, a life estate was devised to Pena Gronbach, with remainder in fee to the persons and in the proportions set forth in the fourth paragraph of said will; that upon the sale of said real estate under the power granted in the will of Henry Gronbach, the proceeds of said sale became impressed with a trust in the hands of Pena Gronbach; that she was entitled to the income and profits received therefrom during her lifetime; that the corpus of said trust was vested in said remaindermen subject to said rights of Pena Gronbach; that upon the death of Pena Gronbach, her executor became entitled to said funds only as trustee for the benefit of said remaindermen and that the unpaid balance received by him after the death of Pena Gronbach was received by him as trustee; that upon the death of Pena Gronbach, her interest in said funds ceased; that her executor succeeded her as trustee of said funds and now holds such funds as trustee for the persons named in clause four of said will; that of the full amount of the trust fund of $30,000, the sum of $24,000 has been traced and identified as a separate fund in the hands of JUDGE HOLLERICH, as executor, and the court appoints him trustee to make distribution of said sum of $24,000 (less $33 expended for revenue stamps) among the persons named in the fourth clause of the will of Henry Gronbach; that a further sum of $6,000 was received and held in trust by Pena Gronbach for the benefit of the persons mentioned in clause four of the will of Henry Gronbach, which fund cannot be traced or identified as a separate fund in the hands of JUDGE HOLLERICH, executor; that there is an allowable credit of $1,201.40 to which he, as executor, is entitled, being the amount Pena Gronbach incurred and expended in the administration of said fund, leaving a balance of $4,798.60. For this aggregate amount, several money judgments were

rendered against her executor and in favor of eighteen appellees for the respective amounts to which each was entitled under the provisions of the will of Henry Gronbach. The chancellor classified said judgments as of the fifth class and directed the same to be paid by appellant, C. N. Hollerich, as executor, in due course of the administration of the estate of Pena Gronbach, deceased. To reverse this decree said executor and La Salle National Bank and Trust Company, as trustee, and Betty Halte prosecute this appeal.

Counsel for appellants insist that the interest of the several beneficiaries named in the fourth clause of the will of Henry Gronbach was a vested interest subject to be divested by the exercise of the power of sale by the life tenant; that there was a valid exercise of this power by the life tenant and thereupon the interests of the beneficiaries named in the fourth clause of the will of Henry Gronbach were extinguished. Counsel also insist that if the proceeds of this sale, upon the conveyance by her, did not become her absolute property that then the will of Henry Gronbach made no disposition of the proceeds arising from this sale and said proceeds thereupon became intestate property and under our statute descended, as provided by law, to his widow, Pena Gronbach, and passed to appellants under the provisions of her will. In support of this contention that the proceeds of this sale became intestate property and descended to the widow, counsel cite *Ness v. Lunde,* 394 Ill. 286 and *Tilton v. Tilton,* 382 Ill. 426. These cases are not in point here. In neither case did the testator make any disposition of the remainder after devising a life estate to his wife.

In *Olson v. Weber,* 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370, the facts were that John Jones died testate in 1909, a resident of Peoria, Illinois. No parents or children survived him, but only his widow,

248

Elizabeth Jones. The second clause of his will provided: "I will, devise and bequeath unto my wife, Elizabeth Jones, all the property, real, personal and mixed, of which I may die seized or be entitled to at my death, to have and to hold for and during her natural lifetime; with full power however, to my said wife to sell and convey any or all of my said estate, real or personal, as she may see fit, and use the proceeds thereof as she may see fit, but it is further my will that my said estate or whatever part thereof that remains undisposed of by my said wife at her death, shall go to and be held by Emma B. Taylor, wife of James A. Taylor, now residing at Averyville in the said County of Peoria, for and during her natural lifetime, and at her death to be divided equally between the children of said Emma B. Taylor." Emma B. Taylor died prior to the death of the widow, Elizabeth Jones, and her children brought the instant suit against the heirs-at-law of Elizabeth Jones seeking a construction of the foregoing clause of the will of John Jones and claiming to be the owners of certain real estate located in Fayette county, Iowa. At the time of his death, John Jones owned eighty acres of land in Shelby county, Illinois. Elizabeth Jones accepted the provisions of the will of John Jones and subsequently sold the Shelby county land and received therefor $15,000. Later she purchased eighty acres of land in Christian county, Illinois, for $13,600 and used in payment therefor the identical money she had received from the sale of the Shelby county land. A little later she exchanged the Christian county land for the 120 acres of land in Fayette county, Iowa, which is the subject matter of the instant suit. The Fayette county land was valued at $16,000 and $2,000 additional in cash was paid by Elizabeth Jones, $1,200 of which was money received from the sale of the

249

Shelby county land and the balance of $800 was received as rents from the Christian county land. In affirming the decree of the district court of Fayette county, which confirmed the title to the land in controversy in the children of Emma B. Taylor, the Supreme Court of Iowa held that the will of John Jones did not purport to devise to his widow a fee but created a life estate with power of sale in Elizabeth Jones and a vested remainder in the remainderman and that a change in the form of the estate under the power expressly given in the will did not have the effect to enlarge or change the nature of the original title thereto. The court cited *Barton v. Barton,* 283 Ill. 338 and in the course of its opinion said: "The intent of the testator is plain. He must have had in mind that a part of the estate might be undisposed of at the death of his widow, and to avoid the possibility of an intestate estate he expressly provides for the vesting thereof in certain remaindermen. It has been repeatedly held that the testamentary disposition of 'what remains' or the part 'that remains undisposed of' is a sufficient designation to create and vest title in the remainderman. The plaintiffs herein are the only children of Emma B. Taylor and are the ultimate remaindermen. They are entitled and hold a vested estate in whatever estate remains." Further on the court inquired: "Does a life tenant, who sells the devised property or changes its form pursuant to a power to do so, invest himself with a greater title to the newly acquired property than he formerly had to the specific property devised?" and then answered: "It is undisputed in the instant case that the widow twice exercised her power of disposal under the will of her husband. It is also undisputed that the proceeds of said sales eventually purchased the Iowa land which is the basis of this action. . . . The will of the testator could

easily be defeated by the life tenant if by the mere fact of sale such tenant could enlarge a life estate into a fee. A court would necessarily protect the remaindermen in order to effectuate the intent of the testator.''

In *Barton v. Barton,* 283 Ill. 338, cited with approval in *Olson v. Weber,* 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370, *supra,* the court held that under the provisions of the will and codicil of Patrick Barton, his daughter-in-law, Anna Barton, was given a life estate in certain real estate with remainder to the children of his son, John J. Barton, with power to the life tenant to sell or dispose of the fee. In the course of its opinion the court said: (p. 341) ''The power to sell and convey the fee did not enlarge the estate of Anna Barton beyond that before devised to her, but only gave her power to change the form of the property when she should believe it to be to advantage to do so. The codicil did not revoke the devise of the remainder to the children of John J. Barton, and at her death his children, in case of a sale, will be entitled to the remainder in the property in its altered form. She has an estate in possession under the devise to her, and as the codicil contains no indication of a contrary intention respecting the proceeds of a sale or sales she would be entitled to the possession of such proceeds, with a right to the enjoyment of the income during the continuance of her estate, but as to the principal she would occupy a trust relation to those entitled to the remainder. Such a relation would give a court of equity jurisdiction to protect and preserve the remainder according to the intention of the testator.''

In *Bevans v. Murray,* 251 Ill. 603, the will of Mary M. Champlin employed this language: (p. 607) ''I give, devise and bequeath to my beloved husband, Alfred H. Champlin, if he shall survive me, all my remaining

estate, both real and personal, in whatever it may consist or wherever situated, at the time of my decease, to be by him used and disposed of during his natural life precisely the same as I might do were I living, hereby giving to my said husband full power to sell, exchange, mortgage, invest and reinvest the same in the same manner as I might do if living, and to use so much of the income and principal thereof as he may desire.'' A subsequent clause provided that if any of her estate, either in its original form or otherwise, remained undisposed of by her husband at the time of his death the same was devised and bequeathed to her daughter, her sister and her brother. After the death of Dr. Alfred H. Champlin, the daughter of the testatrix filed her bill to set aside certain deeds made by Dr. Champlin under the power given to him under the will of his wife. The decree of the lower court set aside all the conveyances. The Supreme Court affirmed the decree in part and reversed it in part. In affirming that portion of the decree which set aside a deed dated April 23, 1904, the Supreme Court said: (pp. 619, 620) ''This conveyance is without any pretense of consideration and was clearly an attempt on the part of Dr. Champlin to divert the fee of this property from the testamentary legatees named in his wife's will and substitute in their places the beneficiaries named in his declaration of trust. It cannot be held that the power to thus dispose of this property is given by the will. . . . Dr. Champlin took under the will and derived all his power from the will alone. This conveyance is inconsistent with the testamentary scheme of the testatrix, and if given effect would wholly defeat the residuary devisees to whom she had devised the property.'' With reference to another conveyance made by the husband, the consideration therefor being in the hands of one of the joint owners at the

252

time of Dr. Champlin's death, who was also the executor of Mrs. Champlin's will, the court said: (p. 622) "Regarding the conveyances as a proper exercise of the power, and conceding that had Dr. Champlin lived he could have properly used this money for his support or could have reinvested the same, still, the money being on hand at the time of his death and not having been used by him for any proper purpose, it must be regarded as representing that amount of undisposed of assets of the estate of Mary M. Champlin. In other words, the money must be regarded as a substitution for the land from the sale of which it arose, and any equities that would attach to the real estate itself will also exist in the fund. All of the real estate of Mary M. Champlin in the hands of her executor constituted a trust fund, from which the trustee had certain powers under the will. Where a trustee disposes of the trust fund, equity will follow the fund as long as it can be identified, and impress the trust on it regardless of any change that may have been made in the fund. Dr. Champlin, having the power to sell for the purpose of reinvestment under the will, might have sold this or any other portion of the estate and purchased other real estate with the proceeds. Had he done so, the real estate thus purchased would have been impressed with the same trust as the original estate. The mere fact that he happened to have $1000.00 in cash on hand at the time of his death which had not been reinvested or otherwise disposed of in accordance with the powers of the will does not have the effect of transferring this fund to the individual estate of Dr. Champlin."

In *Cales v. Dressler*, 315 Ill. 142, the will of Charles A. Gaines, who died on January 11, 1922, provided: "After the payment of such funeral expenses and debts, I give, devise and bequeath to my beloved wife,

253

Sarah Ann Gaines, all of my property, of whatsoever kind and wherever located, both personal and real estate, to have for her own, to do with as she wishes,— that is, to either keep or sell, as she wishes, and spend the proceeds as she may desire. After the death of my wife, Sarah Ann Gaines, if there be any of my estate left it is my will that whatever is left be equally divided between my nephew, William Troy Cales, his wife, Johanna Cales, and my niece, Minnie L. Cales.'' The court held that by this language a life estate was devised to Sarah Ann Gaines with power in her to sell the fee and expend the proceeds as she might desire but if any estate remained at the death of the life tenant it passed to the named remaindermen. It appeared in this case that on February 11, 1922, the widow deeded one parcel of land which belonged to her husband at the time of his death to Nelda Himmel, who, two days later, reconveyed it to her. She also made a will in which she directed her executor to sell her real estate and distribute the proceeds among certain named persons. On April 5, 1922, Mrs. Gaines died. In affirming a decree which set aside the deed from Mrs. Gaines to Nelda Himmel and the deed from Nelda Himmel to Mrs. Gaines and which found that the will of Mrs. Gaines was ineffectual to devise that parcel of land, the court said: (p. 147) ''If the testator had desired his property to go to his widow absolutely and unconditionally he would simply have given it to her outright, with no mention of a disposition of the remainder and without limiting her power of disposition to that of conveyance in her lifetime.'' The court continued: (p. 148) ''The deed to parcel A from Sarah Ann Gaines to Nelda Himmel and the reconveyance to Mrs. Gaines were made in order that the property might pass under her will instead of the will of her deceased husband. . . . He intended that the

residue should pass by his will. The power of sale conferred by his will upon his widow excludes a conveyance by her for the sole purpose of cutting off the remainder and making it possible that the property pass under her will. To sustain a conveyance for such a purpose would permit a mere subterfuge to defeat the testator's intention. The deeds to parcel A were ineffectual to convey that parcel, and it did not pass by the will of Sarah Ann Gaines but by the will of Charles A. Gaines to his remaindermen.''

In the instant case it appears from the pleadings and stipulations of the parties that Henry Gronbach and Pena Klingler were married on April 1, 1894, Henry then being 29 years of age and Pena, 23 years old. They immediately went to reside upon a rented farm and continued to live there until February 23, 1910, when Henry purchased the real estate, being a one hundred acre farm, the proceeds from the sale of which is involved in this proceeding. From the time this land was purchased until the death of Henry Gronbach on April 1, 1926, they lived upon this farm, both working in the field, and the entire estate disposed of by the will of Henry Gronbach was acquired by the joint efforts of his wife and himself. On October 24, 1946, when the conveyance of this land was made by Pena Gronbach to Barney Cyrus and Frank J. Cyrus, $12,000 was paid her in cash. On November 4, 1946, she deposited in her savings account in the First National Bank of Peru, in Peru, Illinois, the sum of $5,967. She died on January 9, 1947, being then 76 years of age. From the time she made this deposit in her savings account until her death no withdrawals were made by her from this savings account. Whether this money was a part of the proceeds of the sale does not definitely appear but it is a reasonable inference that it is, and the chancellor so found.

255

 The will of Henry Gronbach gave his wife outright and absolutely all his personal property and a life estate in his real estate with an unlimited power to encumber or sell and convey the fee to this real estate. His will then disposed of one-half of the real estate which she had not disposed of during her lifetime to his nephews and nieces and the remaining one-half to his wife's relatives. The unlimited power of sale which he gave his wife, as stated in the foregoing authorities, did not enlarge the estate of Pena Gronbach beyond a life estate but did give her the power to change the form of the property when she believed it to be to her advantage to do so. By her conveyance she did change the form of the property but by so doing did not invest herself with any greater title to the newly acquired property (the $12,000 in money and the note and trust deed) than she had in the land under the provisions of her husband's will. Considering these provisions and the facts and circumstances found in this record, it cannot be seriously argued that Henry Gronbach intended only to benefit the remaindermen if the real estate he owned at the time of his death continued in the form of a farm at the time of his wife's death but intended to die intestate if the life tenant sold the farm and had not the real estate but the proceeds thereof at the time of her death. The power of sale conferred by Henry Gronbach upon his widow excludes a conveyance by her for the sole purpose of cutting off the remaindermen. To sustain this conveyance for such a purpose would permit the clearly expressed intention of the testator to be defeated.

 Counsel for appellants do not insist that the proceeds of the sale of this real estate by Pena Gronbach, on October 24, 1946, to Barney and Frank J. Cyrus did not come into the hands of JUDGE HOLLERICH,

as her executor. In fact, it was stipulated upon the hearing that on August 18, 1947, JUDGE HOLLERICH, as executor of her estate, filed in the probate court where her will was being administered, an inventory of all of the assets of her estate including the property involved in this proceeding. The property involved in this proceeding is the $30,000 received by Pena Gronbach from the sale of this real estate described in the complaint. It is, however, contended that even though Pena Gronbach, in her lifetime, and her executor thereafter held the proceeds derived from the sale of the real estate as a trust fund, the chancellor erred in entering judgment against the executor and classifying that judgment as a claim of the fifth class and directing payment thereof in due course of administration. The Probate Act (Ill. Rev. Stat., ch. 3, par. 354 [Jones Ill. Stats. Ann. 110.451]) provides: ''All claims against the estate of a decedent shall be divided into classes in the manner following and shall be so classified by the court at the time of their allowance: . . . 5th: Money and property received or held in trust by decedent which cannot be identified or traced.'' In our opinion the facts as disclosed by this record make this provision of the Probate Act applicable so far as the several money judgments aggregating $4,798.60 are concerned. The chancellor did not err in so classifying these claims and rendering the appropriate money judgments and ordering payment to be made in due course of administration.

Under the undisputed and stipulated facts disclosed by this record, the decree appealed from is the only one that could have been rendered under the authorities cited. That decree is right and must be affirmed.

*Decree affirmed.*