ESTATE OF AMANDA E. KLAFTER, DECEASED, AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, LOIS K. SCHUBERT AND LEONARD SCHANFIELD, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Estate of Klafter v. Commissioner
Docket No. 3387-71
United States Tax Court
T.C. Memo 1973-230; 1973 Tax Ct. Memo LEXIS 57; 32 T.C.M. (CCH) 1088; T.C.M. (RIA) 73230; October 17, 1973. Filed Leonard Schanfield, Norman L. Rothenbaum, and William P. Rosenthal, for the petitioner. Seymour I. Sherman, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $236,260.21 in petitioner's estate tax. The sole issue remaining for our decision *58 is whether the corpus of a trust created by the decedent during 2 her lifetime, and of which she was the sole trustee at the time of her death, is includable in her gross estate under the provisions of section 2036(a) (2) or section 2038(a) (1). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Amanda E. Klafter (hereinafter referred to as the decedent), a resident of Chicago, Illinois, died on November 30, 1966. She was survived by a daughter, Lois Klafter Schubert, and a grandson, Stephen D. Mandel. [2]
American National Bank and Trust Company of Chicago, Lois Klafter Schubert, and Leonard Schanfield were appointed co-executors of decedent's estate. 3 They filed a timely Federal estate tax return, *59 electing the date-of-death valuation of the gross estate, with the district director of internal revenue, Chicago, Illinois. At the time they filed the petition in this case, the corporate executor had its principal place of business in Chicago, Illinois, and the two individual executors were legal residents of that same city. On May 1, 1950, decedent created an irrevocable trust and reported the transfer as a gift on the Federal gift tax return she filed for that year. Decedent and her husband were designated in the trust agreement as the original trustees. Decedent's husband predeceased her, and she remained as the sole trustee until her death. The trust agreement recited the desire of decedent to "make suitable provision whereby sufficient property may be accumulated and held for the benefit of her daughter so that she may be financially independent and capable of caring for herself without assistance from others." The pertinent dispositive provisions are as follows: ARTICLE ONE Net Income A. The net income of the Trust shall be distributed to LOIS KLAFTER SCHUBERT 4 in such amounts and at such times as the Trustees shall make a determination that such net *60 income is required by LOIS KLAFTER SCHUBERT to maintain her standard of living in the style to which she has been accustomed at the date of the creation of this Trust. B. All net income not distributed under the provisions of Paragraph A of this Article, and all income undistributed on the death of LOIS KLAFTER SCHUBERT shall be added to and become a part of the corpus. Corpus C. The Trustees may distribute to LOIS KLAFTER SCHUBERT or may expend on her behalf all or any part of the corpus which they may deem necessary for her support, maintenance, health, education and comfortable living. D. Upon the death of LOIS KLAFTER SCHUBERT, the corpus shall be distributed as follows: (1) To the lawful issue of LOIS KLAFTER SCHUBERT then living per stirpes and not per capita. (2) In the event there are no lawful issue of LOIS KLAFTER SCHUBERT then living to the JEWISH FEDERATION OF CHICAGO. [3]
*61 5 At the time of her death, decedent owned certain jewelry, which was reported on the estate tax return at a value of $6,500 and determined by respondent in his notice of deficiency to have a value of $11,675. The fair market value of such jewelry at the time of decedent's death was $10,000. OPINION Respondent contends that the trust which decedent created during her lifetime, and of which she was the sole trustee at the time of her death, is includable in her gross estate under sections 2036(a) (2) and 6 2038(a) (1). [4] In respondent's view, the power held by the decedent to invade the corpus of the trust amounted to "the right * * * to designate the persons who shall possess or enjoy the property" and "a power * * * to alter, amend, revoke, or terminate" within 7 the meaning of those two sections. [5]
*62 The rationale of the statutes involved herein is that a retained power to control the economic enjoyment of property is tantamount to retention of the property itself. Old Colony Trust Company v. United States, 423 F.2d 601, 603 (C.A. 1, 1970); Michigan Trust Company v. Kavanagh, 284 F.2d 502, 505 (C.A. 6, 1960). It is well settled, however, that a dispositive power retained by a grantor-trustee will not require inclusion of the trust property in his gross estate if the exercise of the power is subject to an ascertainable external standard, enforceable against the trustee in a court of equity. See Jennings v. Smith, 161 F.2d 74 (C.A. 2, 1947), the seminal case on the doctrine of external standards. This Court has repeatedly applied that doctrine, construing the dispositive power retained by the grantor-trustee in 8 accordance with the applicable state law and then determining whether the exercise of that power is sufficiently circumscribed by the terms of the trust instrument and that law so as to put the trust property beyond the reach of sections 2036(a) (2) and 2038(a) (1). See, e.g., Estate of Edward E. Ford, 53 T.C. 114 (1969), *63 affirmed per curiam 450 F.2d 878 (C.A. 2, 1971); Estate of Ralph Budd, 49 T.C. 468 (1968); and Estate of Marvin L. Pardee, 49 T.C. 140 (1967). At the outset it is important to note that we do not have a situation where there is unbridled discretion in respect of a power of invasion as was present in such cases as Estate of Janice McNear Towle, 54 T.C. 368 (1970), and Estate of Russell Harrision Varian, 47 T.C. 34 (1966), affirmed per curiam 396 F.2d 753 (C.A. 9, 1968). Nor do we have a situation where the purported limitation utilizes, without more, such broad words as "welfare" (e.g., Henslee v. Union Planters Bank, 335 U.S. 595 (1949)), "happiness" (e.g., United States v. Commercial National Bank of Kansas City, 404 F.2d 927 (C.A. 10, 1968)), [6] or "benefit" (e.g., 9 Dorothy Stuit, 54 T.C. 580 (1970), affd. 452 F.2d 190 (C.A. 7, 1971)). *64 The key to our decision lies in the instrument as a whole and the applicable local law in the context of our recognition that the decided cases fall on both sides of what is essentially a shadowy line. See Estate of Bernard J. McGuire, 59 T.C. 361 (1972). The crucial language of the trust agreement in this case, which is to be interpreted in accordance with Illinois law [7] reads as follows: The Trustees may distribute to LOIS KLAFTER SCHUBERT or may expend on her behalf all or any part of the corpus which they may deem necessary for her support, maintenance, health, education and comfortable living. Respondent concedes that the first four enumerated objects ("support, maintenance, health, education") of decedent's power to invade corpus for the benefit of her daughter constitute external standards sufficiently limiting the exercise of the power. He argues, however, that decedent's power to invade corpus for the "comfortable living" of her daughter is so subjective and expansive as to require inclusion of the trust in decedent's gross estate. 10 We think it significant that the trustees *65 were empowered by the trust agreement here to distribute to or expend on behalf of decedent's daughter all or any part of the corpus "which they may deem necessary" for the specified objects. While this language gave the decedent, as sole trustee, discretion in her manner of exercising the power to invade corpus, the exercise of the power is nevertheless limited to the specified objects of the power. In re Whitman, 22 Ill. 511 (1859). [8] First enunciated in Whitman, this basic 11 limitation on a trustee's powers under Illinois law has been reiterated in cases such as Rock Island Bank & Turst Co. v. Rhoads, 353 Ill. 131, 187 N.E. 139, 144 (1933); French v. Northern Trust Co., 197 Ill. 30, 64 N.E. 105, 106 (1902); Nielsen v. Duyvejonck, 94 Ill. App. 2d 224, 236 N.E. 2d 743, 746-747 (1968); and Walliser v. Northern Trust Co. of Chicago, 338 Ill. App. 263, 87 N.E. 2d 129, 131 (1949). We also think it significant that the trust instrument recited that it was decedent's desire that the property be held "for the benefit of her daughter so that she may be financially independent and capable of caring for herself without *66 assistance from others." Such language has a restrictive connotation and negates the idea that the trustees could invoke the power of invasion without regard to the customary expenditures of the daughter. Respondent concedes, and we agree, that the accustomed standard of living of the beneficiary is a sufficiently ascertainable and objective standard and that a grantor-trustee's power to invade corpus limited by such a standard would not sweep the trust property into his gross estate. State Street Bank and Trust Company v. United States, 313 F.2d 29 (C.A. 1, 1963); 12 Jennings v. Smith, supra; and Estate of Robert W. Wier, 17 T.C. 409, 418-419 (1951). "Comfortable living" may be regarded as synonymous with a term more frequently encountered in trust instruments - "comfort." Certainly the former term is no more expansive than the latter. Both import a certain degree of liberality in expenses of living. See Lehnard v. Specht, 180 Ill. 208, 54 N.E. 315, 317 (1899) (construing a power to invade corpus for "support and maintenance in a comfortable living"). See also Estate of Lucius H. Elmer, 6 T.C. 944, 948-949 (1946) *67 (construing in a related statutory context a trustee's power to invade corpus for the "comfortable support and maintenance" of the beneficiary). See also cases collected in Estate of Bernard J. McGuire, supra, 59 T.C. at 364. The question is whether such degree or liberality is nevertheless fixed within limitations enforceable against the grantor-trustee. The decision of the Illinois Supreme Court most squarely in point is Rock Island Bank & Trust Co. v. Rhoads, supra, cited with approval in Helvering v. Stuart, 317 U.S. 154, 1965 (1942). Construing a trustee's power to invade corpus "for her comfort * * * in life," 13 the court stated that such language "would be a limitation on her power of [invasion of] such of the corpus as she should determine necessary to maintain her in the station in life to which she was accustomed." 187 N.E. at 144. Although the instrument creating the trust therein, like the one in this case, did not explicitly limit the power of invasion to the beneficiary's accustomed standard of living, the court thus determined that the term "comfort in life" is implicitly referable to and circumscribed by *68 that standard. The same principle has appeared more recently in Nielsen v. Duyvejonck, supra, 236 N.E. 2d at 746-747, where the Appellate Court of Illinois, although holding that the power in question had been properly exercised, indicated that a power to invade corpus for the beneficiary's "comfort and support" would not permit exercise of the power to increase the beneficiary's style of living. We agree with respondent that the phrase "comfortable living" cannot be treated as surplusage or construed as being limited by the discretionary power of the trustees to distribute or accumulate income. However, we are satisfied that, under the terms of the instrument as a whole and in light of the applicable state law, the 14 decedent's power of invasion should be construed as being independently limited by the ascertainable external standard of the beneficiary's accustomed standard of living. [9]
*69 Accordingly, we hold that the trust property is not includable in decedent's gross estate under sections 2036(a) (2) and 2038(a) (1). 15 Having considered all the evidence of record relating to the valuation of certain jewelry owned by the decedent at the time of her death, we have found, and so hold, that such jewelry had a fair market value at that time of $10,000. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended. An additional issue involving the valuation of certain jewelry was decided by the Court at the trial and its decision is reflected in the findings of fact herein (see p. 5, infra ). Cf. Morris M. Messing, 48 T.C. 502, 512↩ (1967). 2. The record does not reveal whether Stephen D. Mandel is the child of Lois Klafter Schubert. ↩
3. Article Sixteen of the trust agreement provided that the trust created thereunder - [is], and shall continue to be, irrevocable, it being the purpose and intention of the Donor [decedent] completely to relinquish, transfer, deliver, convey and assign to the Trustees all of the Donor's right, title and interest in and to the Trust Estate. The Donor does hereby release and relinquish any and all right at any time hereafter to alter, amend or modify this Trust Agreement or any of the terms or provisions thereof, in whole or in part, in any form or manner whatsoever. Article Eighteen provided that - the validity and construction [of the trust] shall be determined and governed in all respects by the laws of the State of Illinois, and the [trust] powers and provisions herein contained shall be administered, executed and carried into effect according to the laws of the State of Illinois. ↩
4. SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death - * * * (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. SEC. 2038. REVOCABLE TRANSFERS. (a) In General. - The value of the gross estate shall include the value of all property - (1) Transfers after June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death. ↩
5. While sections 2036(a) (2) and 2038(a) (1) do not always coincide in their scope and effect, they appear to do so insofar as the present case is concerned. For a discussion of the interrelationship between the two sections, see Note, "The Doctrine of External Standards Under Sections 2036(a) (2) and 2038," 52 Minn. L. Rev. 1071, 1071-1075↩ (1968). 6. Compare United States v. Powell, 307 F.2d 862 (C.A. 10, 1962), and Estate of Edward E. Ford, 53 T.C. 114, 125-127 (1969), affirmed per curiam 450 F.2d 878↩ (C.A. 2, 1971), where additional language was held to justify the conclusion that the use of the word "happiness" did not preclude a finding of an ascertainable standard. 7. See Article Eighteen of the trust agreement, fn. 3, supra. ↩
8. In that case, decedent's will provided that his wife "shall have the control of all my property until my youngest surviving child shall become of lawful age, for their support, education, and maintenance." In construing this provision, the Supreme Court of Illinois said "the power to control [the property] is limited to the objects specified, and [the wife] is not authorized to go beyond these purposes, but within the limit prescribed therein she may exercise her discretion. The manner * * * of the support, education, and maintenance is not prescribed, but if she were squandering and misapplying the fund, a court of equity would restrain her and compel its application to the purposes of the trust declared in the will." 22 Ill. at 521↩. 9. We note that, in a case also involving section 2036 and section 2038, the government conceded that language in a trust instrument "to provide for the comfortable care, maintenance and support of the Income Beneficiary" constituted an appropriate external standard. See DeLancey v. United States, 264 F. Supp. 904, 907-908 (W.D. Ark. 1967). At the trial herein, the Court excluded evidence relating to the decedent's exercise, a little over one year prior to her death, of an identical power of invasion to terminate another trust for the benefit of her daughter which was established on the same day as the trust involved herein. We see no reason to delineate the various reasons which support the correctness of such action, some of which are set forth in the record herein. Nevertheless, we are constrained to remark that, even if we had taken into account such trust instrument and the action of the decedent in respect thereto, our conclusion herein would not have been different. ↩