*In re* ESTATE OF HANS W. POLLEY, Deceased.—(Citizens and Southern National Bank of Macon, Georgia, Trustee under the Last Will of Gertrude Polley, Deceased, Petitioner-Appellee and Cross-Appellant, *v.* Krystyna Regina Stelmach Polley, Ex'r of the Estate of Hans W. Polley, Respondent-Appellant and Cross-Appellee.)

First District (2nd Division)   No. 81—3197

Opinion filed December 28, 1982.

Sidney Z. Karasik, of Chicago, for appellant.

Roy M. Van Cleave, of Keck, Mahin & Cate, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Decedent Hans Polley's first wife, Gertrude Polley (Gertrude), died testate on October 9, 1963, a resident of Georgia. In her last will she named decedent executor and gave him one portion of her estate "absolutely and in fee simple." He was also given a life estate in the second portion, with the remainder to Citizens and Southern National Bank of Macon, Georgia (Bank), as trustee under specified terms and conditions. Two years after Gertrude's death, decedent married respondent, Krystyna Polley (Krystyna). Decedent died testate in July

1978, a resident of Cook County, naming Krystyna as executor and leaving her his residuary estate.

The Bank filed a petition in decedent's estate to recover shares of stock or the proceeds of their sale, which decedent originally held as life tenant under Gertrude's will, but had since reregistered in his own name. After an evidentiary hearing, the circuit court of Cook County entered judgment in the Bank's favor and directed Krystyna to turn over to the Bank various shares of stock allegedly belonging to the remaindermen under Gertrude's will. Both parties appeal.

The issues raised by Krystyna on appeal include whether: the circuit court misconstrued certain provisions of Gertrude's will; the circuit court erred in precluding introduction of certain evidence pertaining to decedent's illness and his need to encroach on the corpus of the life estate assets; the findings of the circuit court were against the manifest weight of the evidence; and the Bank should have disqualified itself as ancillary executor of decedent's estate. The issue on cross-appeal by the Bank is whether the circuit court properly denied the Bank's motion for attorney fees and costs.

Item II of Gertrude's will dated May 4, 1961, divided her estate into two equal portions. Item III provided:

"The first portion divided as provided in Item II, I give, bequeath and devise unto my husband absolutely and in fee simple.

The second portion divided as provided in Item II, I give, bequeath and devise unto my husband for life with remainder to the Citizens and Southern National Bank, Macon, Georgia, as trustee under the terms and conditions and for purposes specified in paragraph 2, subparagraphs (a) through (f) of Item IV hereof. During his lifetime my husband as life tenant shall be entitled to receive all the income from this portion at such intervals as he may determine. My husband shall also have full power without the order of any court whatsoever to encroach upon the corpus of the property held by him as life tenant for his support in his accustomed manner of living, including the power to encroach upon it for medical, dental, hospital and nursing expenses and expenses of invalidism."

Item IV of the will identified the remaindermen of decedent's life estate trust to be distributed after his demise.

Item V of Gertrude's will specified, in part:

"My executor, my husband, as life tenant, and my trustee shall each have full power and authority to manage and control my estate, any trust property, and any property held by my hus-

band as life tenant in such manner as each respectively deems fit and proper with full power to sell, mortgage or dispose of all or any portion thereof, free of all limitations, publicly or privately, for cash or on credit, including the power in my husband as life tenant to sell, exchange or encumber the fee simple title to any property so held by him, all without the approval or order of any court or other authority whatsoever, the proceeds to stand in place of such property."

Decedent became seriously ill and in 1976 he reregistered certain stock certificates held in his name as life tenant into his own name and he used the proceeds from the sale of other life tenancy stock to purchase stock, which was registered in his own name, the identities of which will be discussed later in this opinion. After a specific bequest to a Georgia church, in his will decedent left the remainder and residue of his estate to Krystyna. The original inventory filed in decedent's estate listed, *inter alia*, a schedule of common stocks having an estimated value of $260,270.38.

At trial, the Bank endeavored to show that decedent's estate inventoried specific items of property belonging to the estate of Gertrude. In particular, the Bank introduced into evidence two written ledgers which were assertedly maintained by decedent on a regular basis to record stock transactions in his own name and transactions in his name as life tenant under Gertrude's will. The ledgers, Petitioner's Exhibits Nos. 2 and 3, respectively, identify the certificates that decedent reregistered from his name as life tenant to his individual name:

100 Shares of Southern Company.
100 Shares of Timken Company.
500 Shares of American Electric Power Company.
500 Shares of Interstate Power Company.
300 Shares of Kansas Gas & Electric Company.
500 Shares of Louisville Gas & Electric Company.

The circuit court found that decedent transferred to himself in his own name certain shares of stock which had been held in his name as life tenant; and that in the same year he purchased certain shares of stock which were registered in his own name paid for from the proceeds of the sale of stock held in his name as life tenant. The court ordered Krystyna to deliver to the Bank as trustee, free and clear from liens or claims, the above-listed plus other specified shares of stock, together with dividends declared to stockholders of record of those stocks on and after July 10, 1978. This appeal and cross-appeal follows.

## I

■ Krystyna contends that since, under Gertrude's will, decedent was granted the power to encroach upon and dispose of life estate assets, the effect was to make an outright and absolute bequest which defeated the remaindermen rights, both under Georgia and Illinois law. This argument rests primarily on Krystyna's assertion that the circuit court misconstrued the phrase "the proceeds to stand in place of such property" in Item V of Gertrude's will, arguing that "such property" referred only to property held by decedent in "fee simple title"; that is, real property rather than personal property, *i.e.*, stocks. Therefore, Krystyna concludes, Gertrude cast no restriction upon the proceeds which decedent might derive from the sale or disposition "of all or any portion" of the life tenancy personal property. The circuit court's attempt to trace the proceeds in the instant case was therefore erroneous, she claims. The Bank asserts that the provision, "the proceeds to stand in place of such property" refers to the property subject to the power to manage and control of the three parties named in that paragraph: "*** [m]y executor, my husband as life tenant, and my trustee." The Bank maintains Krystyna's construction emasculates the meaning of that paragraph and renders the power given to the executor and trustee substantially greater than that given the life tenant. The Bank also argues that even without the specific language that the "proceeds" of disposition were to "stand in place of such property," decedent would be precluded from defeating the rights of the remaindermen by merely reregistering the shares of stock.

Construing the relevant provision as a whole, it appears that the phrase "such property" refers to the property subject to the power to manage and control. This construction is consistent with the provisions of Gertrude's will in its entirety, which disposed of her estate by dividing it into two portions with the first part being an absolute bequest to decedent and the second part being a grant "unto *** [her] husband for life with remainder to the" Bank. Given this dichotomy and decedent's limited power of encroachment, it is unlikely that Gertrude intended to allow him the right to defeat the interest of the remaindermen unless the specified conditions of encroachment were met.

The next contention made by Krytsyna is that where the life tenant is given the unlimited power of disposing of the property, the life tenant is deemed to have taken the property absolutely, and an attempted limitation over anything remaining undisposed of is to be held void. However true this asserted legal principle may or may not

be, it is irrelevant to the case *sub judice*. Decedent was not given an unlimited power to dispose of the property in Item V of Gertrude's will as noted above. Although decedent alone had the power to determine such portions of the corpus to encroach upon for his support and expenses, he cannot be said to have been given that power for the purpose of building up his separate estate. (See *Rock Island Bank & Trust Co. v. Rhoads* (1933), 353 Ill. 131, 142, 187 N.E. 139.) The cases relied upon by Krystyna are inapposite, therefore. See, *e.g., Williams v. Jones* (1963), 219 Ga. 45, 131 S.E.2d 553; *Williams v. Bullock* (1973), 231 Ga. 179, 200 S.E.2d 753; *Nielsen v. Duyvejonck* (1968), 94 Ill. App. 2d 224, 236 N.E.2d 743.

■ Next Krystyna urges that the circuit court's interpretation of the phrase "the proceeds to stand in place of such property" is illogical; if all proceeds from the sale or disposition of life tenancy assets were to "stand in place" of the disposed property, the "proceeds" could not be used for any of the legal purposes designated in the will. This contention is without merit. The circuit court's interpretation of the phrase in question is not inconsistent with other provisions in the will. The proceeds from the property so sold or disposed of would still retain its life estate character unless used by decedent for his support in "his accustomed manner of living," including expenses for medical, dental, hospital, nursing and invalidism.

## II

■ Krystyna maintains that the circuit court erred in precluding competent and relevant evidence that decedent's serious illness and disability necessitated invasion of the corpus within the authorized purposes stated in Gertrude's will. Krystyna testified that in 1976 her husband's health was rapidly declining; he had "multiple arteriosclerosis, third degree" and, he was hospitalized several times during that year. That was the year in which decedent reregistered into his own name some of the life tenancy shares of stock received by him under Gertrude's will, sold still others and purchased new securities. After Krystyna testified to decedent's poor health, the Bank objected on the ground that this testimony was irrelevant. Krystyna's trial attorney responded in part, "The relevancy is that we have a concentration of transactions by the petitioners. *** I have all I need in the record now, your Honor. I don't need to pursue that line any further." The court then sustained the objection.

Although such testimony was relevant to the issue of the extent to which decedent exercised his right to invade the corpus of the assets to pay for the medical, dental, hospital and nursing expenses,

that right was waived, as the colloquy above demonstrates. There is no evidence in the record of any medical bills or indeed any evidence indicating payment of money for decedent's support, nor was there any offer of proof as to these matters. Although a reviewing court bears a responsibility for effecting a just result which may sometimes override considerations of waiver, it cannot consider such issues where they are not answerable by evidence already in the record (*Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 793, 424 N.E.2d 911, *appeal denied* (1981), 85 Ill. 2d 577), or where, as here, proof might have been offered to refute or overcome such issues had they been presented at trial. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831.) Krystyna urges that this court take "judicial notice" that the hospitalization bills of a person in decedent's condition were huge and in excess of the dividend income that he received from the stock. Although hospital and medical costs may be high, and even rising, as a matter of common knowledge, these are not appropriate facts of which the court can take judicial notice, particularly where specific comparisons, as here, are sought to be made.

### III

■ The next issue raised is whether the Bank sustained its burden of establishing that decedent's estate inventoried "specific, identifiable" items of property belonging to the estate of his first wife. Krystyna appears to concede that certain stocks were reregistered from Hans' life estate to his personal name; however, she asserts that "*** only the 100 shares of Southern and 100 shares of Timken were traced to Gertrude's holding at the time of her death." Krystyna challenges the validity of the Bank's evidence purportedly showing that decedent used the proceeds from the sale of the life tenancy stock to purchase stock registered in his own name. The Bank insists that the aforementioned ledgers maintained by decedent and certain brokerage statements demonstrate the link between his life estate assets and the stock inventoried in his estate. We agree. Trust proceeds, no matter what their form, clearly may be traced as was done in the present case. (*Cales v. Dressler* (1924), 315 Ill. 142, 146 N.E. 162; see *In re Estate of Tognotti* (1970), 128 Ill. App. 2d 120, 262 N.E.2d 803.) Our examination of the evidence relating to this issue reveals no basis upon which to find the circuit court's conclusion to be against the manifest weight of the evidence in this case. *In re Estate of Weisberg* (1978), 62 Ill. App. 3d 578, 378 N.E.2d 1152.

## IV

Krystyna's next contention is that the Bank's petition should have been barred under the doctrine of *laches*. The doctrine of *laches* is founded on the reluctance of a court to aid one who has knowingly slept on his rights for an unacceptable length of time, and applies where: (1) conduct on defendant's part gives rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay occurs in asserting complainant's rights, although complainant had notice or knowledge of defendant's conduct and the opportunity to institute suit; (3) defendant lacks knowledge or notice that complainant would assert the right on which the suit is based; and (4) the existence or absence of injury or prejudice to defendant in the event relief is accorded complainant or the suit is held not to be barred. *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341.

In the present case the Bank was informed of decedent's death in a letter dated July 17, 1978, one week after his death, from the attorney for the estate, who wrote: "It is my understanding as of the present date that no other Life-Tenancy assets [other than a certain note dated May 27, 1965, in the face amount of $27,000] were held by Mr. Polley as of the date of his death." Such an assertion can hardly be said to have alerted the Bank to the existence of life-tenancy assets. On October 27, 1978, the Bank wrote the attorney "there were substantial assets that should have been registered in Mr. Polley's name as life tenant," and asked for his assistance in trying to locate any additional life tenancy assets. On November 14, 1978, the attorney responded, "by 1976 the portfolio of Life-Tenancy stocks had been considerably changed, apparently with the intent to secure greater current income," and stated that the "encroachments" were "effected through the stock brokerage firms," which he identified. The attorney then stated, "If any additional details come to my attention as I examine Mr. Polley's voluminous papers, I will alert you." The Bank waited 10 months, until September 12, 1979, to file the instant petition. In consideration of the foregoing, we cannot agree that the Bank was guilty of *laches*.

Further, the question of whether this delay prejudiced the rights of Krystyna was not presented to the circuit court for consideration and cannot be considered for the first time on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *In re Marriage of Theeke* (1981), 105 Ill. App. 3d 119, 433 N.E.2d 1311.

## V

The final contention made by Krystyna is that the Bank should

have disqualified itself as an ancillary executor of decedent's estate before presenting the instant petition on behalf on decedent's first wife. Absent such disqualification, she claims, petitioner was in an intolerable conflict of interest. The Bank denies that it was ever appointed ancillary executor and argues further that this argument is being raised for the first time on appeal. Under the circumstances presented, the issue has been waived. *Kravis v. Smith Marine, Inc.; In re Marriage of Theeke.*

## VI

■ In its cross-appeal, the Bank maintains that it is entitled to reasonable attorney fees and costs under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41), now section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611), because Krystyna made untrue allegations in her pleadings. In particular, the Bank objects to that portion of Krystyna's answer to the petition which states that she was informed and believed that during his lifetime decedent encroached upon the corpus of the property received by him as life tenant pursuant to the will of Gertrude, except for the note described in paragraph 5 of the petition, and expended the same for his support, pursuant to the terms of the portion of Item III of Gertrude's will so that she had in her possession no assets, or proceeds traceable to such assets, held by decedent as life tenant under Item III of Gertrude's will.

The allegations contained in this pleading do not warrant an award of attorney fees to the Bank. The basis for a substantial part of what was pleaded in the answer is attributable to a misconception of law. In addition, some circumstantial evidence was introduced to show that decedent encroached upon the life estate assets to pay for his medical care. Furthermore, the circuit court could reasonably have inferred from the evidence that decedent held no job during his marriage to Krystyna and was forced to encroach on the corpus of the life estate for his support. Lastly, at trial, Krystyna stated that she was not "familiar with the details of her husband's business affairs" and never looked into either one of decedent's "ledgers" during his lifetime. Accordingly, the Bank's cross-appeal argument must be rejected.

For the above reasons the judgment of the circuit court must be affirmed with respect both to the appeal and cross-appeal.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.