(Nos. 21603, 21644.—

THE ROCK ISLAND BANK AND TRUST COMPANY, Exr., Appellant, *vs.* FRANKLIN K. RHOADS, Exr., *et al.* Appellees.

*Opinion filed June 22, 1933—Rehearing denied October 4, 1933.*

Curtis & Simonson, and Stafford & Schoede, for appellant.

Marshall & Marshall, for appellees.

Mr. Justice Stone delivered the opinion of the court:

The Rock Island Bank and Trust Company, executor of the last will and testament of James F. Robinson, deceased, filed in the circuit court of Rock Island county a bill for accounting against Franklin K. Rhoads, individually and as executor of the last will and testament of Mary E. Robinson, deceased, and certain beneficiaries under her will, seeking accounting for and discovery of property left by James F. Robinson. In the determination of the issues as to accounting there is necessarily involved the construction of certain clauses of the will of James F. Robinson, and the court entered a decree construing the will and ordering an accounting, as hereinafter more fully mentioned. Complainant and defendants in that bill filed separate appeals for review of that decree. The appeals have been consolidated in this court and for the purpose of this opinion the parties will be referred to as complainant and defendants.

James F. Robinson died at Rock Island May 23, 1902, leaving Mary E. Robinson, his widow, and no child or children nor descendant of a deceased child or children him surviving. His estate consisted of his homestead, which was a large residence situated on a lot comprising an entire block in the city of Rock Island, and other real and personal estate, which the bill alleges amounted at the time of his death to more than one million dollars. His will was duly filed and admitted to probate July 18, 1902. The first four clauses provide for payment of his debts and cer-

tain specific legacies, consisting of corporation stocks, money and a certain note. The fifth clause of his will is as follows:

"*Fifth*—All the rest, residue and remainder of my estate, both real, personal and mixed and wheresoever situate, I give, devise and bequeath unto my well-beloved wife, Mary E. Robinson to have and to hold the same unto her for and during her natural life, with full authority to use and dispose of so much of the same as may in her judgment be necessary for her comfort and satisfaction in life.

"And the said Mary E. Robinson is hereby given the full and exclusive management and control of my entire estate with power to invest, re-invest, and change investments and the character thereof as she may deem best; and full power and authority is hereby given to said Mary E. Robinson to, from time to time as she may see fit, sell and dispose absolutely of any, every and all of the real estate, lands and tenements, personal property and choses in action not hereinabove in clauses numbered second (2nd), third (3rd) and fourth (4th) of this my will devised or bequeathed, whereof I may die seized, possessed, the owner of or in any way entitled to, unto such person or persons, corporation or corporations, in such parcels, at such prices and on such terms as she may see fit and due and proper conveyance of such real estate, lands and tenements make, execute, acknowledge and deliver unto the purchaser or purchasers thereof, and due and proper transfer and acquittance make of such personal property and choses in action unto the purchaser or purchasers thereof, and it shall not be the duty of any such purchaser or purchasers to see to the application of the purchase moneys or securities.

"And full power and authority is hereby given to the said Mary E. Robinson to, either in person or by proxy at any and all meetings of the shareholders of any corporation or company wherein I may own or hold capital stock or be in any way interested at the time of my death represent such capital stock or interest therein and at such meetings,

either in person or by proxy, cast the vote to which such shares of capital stock or interest may be entitled. And full power and authority is hereby given said Mary E. Robinson to become and serve as director, trustee or officer of any and every such corporation or company."

By the sixth clause he bequeathed to his wife, absolutely, such pictures, family portraits, furniture and household goods in and about the homestead as she might during her lifetime select. The seventh clause nominated her as executrix of the will without bond. The eighth clause provided: "Upon the death of my said beloved wife, Mary E. Robinson, I give, devise and bequeath our present homestead," (describing it,) together with such furniture and fixtures as she may not then have selected or disposed of, to the trustees of the First Methodist Episcopal Church of the city of Rock Island and their successors, to hold in trust for the purpose of a Deaconness home and orphanage, to be conducted under the rules of that church, with power to sell or dispose of certain parts of the homestead not occupied by the buildings, to provide further funds to conduct the home, such funds to be held and used by the trustees for the purposes of such home. By the ninth clause he provided that "after the death of my said wife, Mary E. Robinson, out of my estate which may then remain, I give and bequeath the sum of $6000 in money to the trustees of the First Methodist Episcopal Church of Rock Island," which is to be by them loaned out and the income therefrom devoted, in part, to the expense of the Sunday school, the remainder to keeping in repair the pipe organ and to be applied upon the salary of the organist. By the tenth, eleventh, twelfth and thirteenth clauses he provided that "after the death of my said wife, Mary E. Robinson, and after the carrying out of the provisions of the above clauses numbered eighth and ninth of this my will, out of all the rest, residue and remainder of my estate of every kind and character which may then remain, I give, devise and be-

queath" one-eighth to the missionary society of the Methodist Episcopal Church, one-eighth each to the northwestern branch of the Women's Foreign Missionary Society of the Methodist Episcopal Church and the Church Extension Society of the Methodist Episcopal Church, and two-eighths to the Northwestern University, located at Evanston, Illinois. Clause 14 is as follows: "After the death of my said wife, Mary E. Robinson, and after the payment of all legacies and bequests, and the carrying out of all the provisions of this my will hereinabove mentioned and set forth, I give, devise and bequeath all the rest, residue and remainder of my estate of every kind and character, (not heretofore by my said wife used and disposed of as provided in clause 5 of this will,) unto the American University, located at Washington, in the District of Columbia, to have and to hold forever, the same to be used in carrying on its work." The fifteenth clause appointed the Central Trust and Savings Bank, a corporation, (later the Rock Island Bank and Trust Company, the complainant,) located in the city of Rock Island, as executor of the will, to carry into effect clauses 9, 10, 11, 12, 13 and 14 of his will, the bank to become executor after the death of his wife, Mary E. Robinson, and not before.

On July 28, 1902, Mary E. Robinson was appointed executrix and letters testamentary were issued to her. She filed an inventory of the property of the estate and at different dates thereafter filed two additional or supplemental inventories. She also filed two reports of her acts and doings as executrix. She died October 19, 1929, leaving a last will and testament, by which she made certain bequests to charity and left the rest and residue of her estate to her brothers, William J. Rhoads and Franklin K. Rhoads, parties defendant herein, and to her sister, Martha L. Dorsey, who later died leaving children, who are also defendants in this cause. Her will was admitted to probate and Franklin K. Rhoads, defendant, was appointed executor thereof.

On October 22, 1929, the Central Trust and Savings Bank, predecessor to the complainant herein, was appointed executor of the will of James F. Robinson, deceased, for the purpose of carrying out the clauses of his will hereinbefore mentioned. Rhoads, the defendant, as executor, turned over to the executor bank certain real estate and personal property as the corpus of the estate of James F. Robinson remaining at the death of Mary E. Robinson, the life tenant.

The complainant, as executor of the will of James F. Robinson, made demand upon Rhoads, individually and as executor of the will of Mary E. Robinson, for an accounting of the estate of Robinson during the time it was held by his widow as life tenant, which accounting, the bill alleges, was refused, and the bill in this case was filed charging that during her lifetime the life tenant had converted a large part of the corpus of the estate of Robinson to her own use and that her executor claimed the same as a part of her estate. It was also alleged that she made personal donations and subscriptions out of the corpus of the estate which she had no power, as life tenant, to make; that she paid out of the corpus of the estate $79,883.57 as compensation to Franklin K. Rhoads for management of the estate during her lifetime, which compensation should have been charged against the income, and that she made improper investments of portions of the corpus of the estate, which should be made good by her estate. The bill prays discovery of books, records and accounts covering the period of the life tenancy, to ascertain the amount of the corpus to which the complainant, as executor of the will of Robinson, is entitled. Defendants answered, denying a right to an accounting and alleging that all of the corpus of the estate of James F. Robinson had been accounted for and turned over to the complainant.

The cause having been referred to a master and his report thereon filed, exceptions to that report were overruled and a decree entered finding that under the will of Robin-

son his widow took a life estate except as to the property she selected under clause 6 of the will; that she had the right to use and dispose of so much of the corpus as in her judgment might be necessary for her comfort and satisfaction in life; that the power to be exercised by her was not an unlimited power but subject to judicial review of a court of equity; that such power was to be exercised in good faith for her comfort and satisfaction in life, which was not confined merely to her support and maintenance but included her pleasure, gratification and satisfaction; that the exercise of her power to use and dispose of the corpus was in nowise affected by the fact that she had property of her own or the amount of income from the estate or the fact that she may have had accumulations of income on hand when such power was exercised; that she had full, exclusive management and control of the estate, with power to sell and transfer title to such of the corpus as she chose, and to invest, re-invest and change investments as she determined best and was not liable for losses in investments, and that she had a right to pay agents out of the corpus of the estate to relieve her of the burden of caring for and managing the property and had the right to make reasonable gifts to charity out of the corpus of the estate where not made with the intention, simply, of depriving the legatees of such property. The decree required defendant Rhoads, both individually and as executor of the will of Mary E. Robinson, to account as to the income of the estate of Robinson and its disposition in so far as it bears on the use of or disposal by Mary E. Robinson of the corpus of the estate and the *bona fides* thereof, as between her and the remaindermen under the will of Robinson, to the date of her death, and that as to the corpus of the estate he account fully as to the acts and doings of the life tenant during such tenancy, and individually as to his own acts as agent or otherwise, of all receipts and disbursements in connection with said corpus, and to account for the said

corpus of the estate remaining in the hands of the life tenant at the time of her death. The cause was re-referred to the master to take an accounting.

The complainant contends that under the will of Robinson his widow took a life interest in the estate limited to the income thereof, and by the power given in the fifth clause her disposal of the corpus of the estate is limited to such part as should be expended by her for her personal use; that this gave her no power to make donations of the property or to use the income of the estate further than was necessary for her comfort and satisfaction; that the balance of the corpus and income passed to the complainant as executor, to be distributed under clauses 8 to 15, inclusive, of the will; that her executor should account for investments of the corpus which resulted in loss to the estate, and that complainant, as such executor, has a right to an accounting as to the use of income and corpus, so as to determine what property should be delivered to it, as executor, for distribution under the will.

Defendants contend that the widow took a fee simple estate in all property not specifically devised, and that if this be not so, she was in any event entitled to the income as her own separate property, and in addition thereto had a right to use and dispose of the corpus of the estate in her unlimited discretion, including disposition by her last will and testament. They also contend that by virtue of the order of the county court on December 12, 1904, approving the report of Mary E. Robinson as executrix, wherein she listed certain stocks as having been taken by her as her own property, the complainant is bound and the question of the ownership of such stocks is not now open. It is also contended that the defendant Rhoads, as an individual, is not liable to account personally for his acts and doings except as her agent, if at all, and that there should in no event be an accounting as to the income, as that was

her separate property under any construction which might be placed on the will.

Complainant in argument concedes that if an unqualified life estate was given to the life tenant she was entitled to all the income accruing out of the estate, and that any part thereof unexpended by her was subject to and passed under her will.

From the bill and answers, by which the claims of the parties are set out, it becomes necessary to construe the fifth clause of the will, which gave all the property, real and personal, to the testator's widow, "to have and to hold the same unto her for and during her natural life, with full authority to use and dispose of so much of the same as may in her judgment be necessary for her comfort and satisfaction in life." It will be observed that by that clause the widow was also given full management and control of the estate, power to invest and re-invest, and to "sell and dispose absolutely of any, every and all of the real estate, lands and tenements, personal property and choses in action" not specifically bequeathed or devised and to vest complete title in the purchasers thereof. She was also given power to control and vote the shares of stock or to become director, trustee or officer in any of the corporations issuing such stock.

It is a rule long followed and frequently announced in this State, that a life estate may be created with power to dispose of the fee; that by the same instrument there may be created a limitation of the remainder after the termination of the life estate, and that such power of absolute disposition annexed to a life estate does not enlarge that estate into an estate in fee. (*Frank* v. *Frank,* 305 Ill. 181; *Barton* v. *Barton,* 283 id. 338; *Burke* v. *Burke,* 259 id. 262; *Powers* v. *Wells,* 244 id. 558; *Ducker* v. *Burnham,* 146 id. 9; *Hamlin* v. *United States Express Co.* 107 id. 443; Sugden on Powers, (8th ed.) p. 394; Farwell on Powers, (1916 ed.) p. 8.) Language conferring a power

of disposal on a life tenant is regarded as pertaining only to the estate devised, and is interpreted as meaning such a disposal as a tenant for life may make unless the language of the instrument conferring the power expressly gives power to dispose of the fee. (*Frank* v. *Frank, supra,* and cases there cited.) It is generally recognized that by reason of the variety in language used in wills, decisions construing them, while frequently helpful, are yet not controlling, and are less helpful as guides than are the cases upon other subjects. (*Boyle* v. *Moore,* 299 Ill. 571; *Ward* v. *Caverly,* 276 id. 416; *Black* v. *Jones,* 264 id. 548; *Wentworth* v. *Fernald,* 92 Me. 282, 42 Atl. 550.) Authorities all agree, however, that in construing wills the intention of the testator is to be gathered, whenever possible, from the language used. *Frank* v. *Frank, supra.*

The fifth clause of the will gave the testator's property, real and personal, aside from certain bequests thereinbefore specified, to his widow for and during her natural life. This language of the will, had there been no other, gave her but a life use, limited to the benefit of the property for her life. But the testator added to that provision the language, "with full authority to use and dispose of so much of the same as may in her judgment be necessary for her comfort and satisfaction in life." The clear meaning of these words is, that the life tenant was given power to sell and dispose of the corpus of the estate not otherwise specifically bequeathed or devised. The only limitation on that power was that such disposal be, in her judgment, necessary for her comfort and satisfaction in life. Within the power of disposal, she, alone, was to determine what was "necessary for her comfort and satisfaction in life." Within that power her disposal was not subject to review by a court of equity or to any review. She, alone, was to determine what was necessary for her comfort and satisfaction in life. The word "comfort" must be construed as relating to her support and ease. "Satisfaction" is a word

of wider meaning and must be construed as intending more than support and comfort. Had this clause provided only for her comfort, it cannot be doubted that such would be a limitation on her power of disposal to such of the corpus as she should determine necessary to maintain her in the station in life to which she was accustomed. But the will goes further. It gives her unlimited discretion to dispose of so much of the corpus as she shall determine necessary to her satisfaction in life. "Satisfaction," in its generally accepted definition, means contentment, gratification, or the repose of mind resulting from such gratification. Webster's Int. Dict.

The language in this will is not unlike that considered in *Dana* v. *Dana,* 185 Mass. 156, 70 N. E. 49. The will in that case gave to the widow power to sell so much of the corpus of the estate as she thought necessary "for her own comfort and happiness." It was there held that the power of disposal given was not alone for her comfortable physical support and existence, though such was undoubtedly in the mind of the testator, but in addition she was to spend and enjoy in the largest manner for her happiness. It was there said: "If through reasons of religion or of benevolence and for her mental satisfaction she chose to devote any part of the estate left to her in aid of either charitable or philanthropic objects, there is nothing in the terms of his will that restricts her from making such use of the principal. If the testator did not care to confine her discretionary powers there is no duty incumbent on us to seek for reasons to limit their exercise." So in this case, power to dispose of the principal of the estate as she shall deem necessary to her satisfaction may properly be said to include such religious or charitable donations or gifts as she might choose to make from the corpus and where such is not for the purpose of building up her separate estate. That such was the intention of the testator is likewise evidenced by the surroundings and manner of living of the

testator and his wife. They had no children. He was a man of wealth, given to religious and charitable work and interested in the development of cultural forces. It is but natural, therefore, that he should intend to include in the power of disposal conferred upon his wife, the power to make such gifts for religious or charitable purposes as should prove gratifying to her. The bill alleges that something over $18,000 of the estate was thus disposed of by the life tenant. We are of the opinion that she had complete power so to do and that her executor is in nowise liable to account therefor.

By the latter portion of the fifth clause she was given full management and control of the estate, with power to invest and re-invest the same as she might deem best. The clear purport and meaning of that language is, that she was given power to sell any portion of the estate not specifically devised and re-invest the proceeds in such manner as she saw fit. Her discretion in the matter was not subject to review by anyone. Therefore, if she made bad investments, by which portions of the corpus of the estate were lost, neither was she, nor is her executor, liable to account for such lost principal, for the testator placed that matter entirely within her discretion. Therefore the claim of the complainant that her executor should account as to certain investments which turned out badly cannot be sustained. Her discretion and judgment in the matter were conclusive. This was the intent and purpose of the testator, and courts may not impose upon the life tenant or her representative a greater requirement than that imposed upon her by the testator.

It will be observed that full power to control and manage the estate was by the fifth clause of the will given to the life tenant. She therefore was empowered to engage assistants and agents to relieve her of that burden. It can scarcely be said, however, that a man of large affairs would intend that portions of the corpus of an estate bearing a

large income should be consumed to meet such expense, and there is no language in the will tending to indicate such an intention. The expense of management and care is ordinarily chargeable to the proceeds or income of property, and it may readily be seen that if the same are to be taken from the corpus, though the property is bearing large income, the corpus must eventually be depleted through the expense of such care. We are of the opinion, therefore, that the item (amounting to something over $79,000) expended for the assistance of the defendant Rhoads as her agent in caring for the estate for the period of nineteen years was properly chargeable against the income of the estate, and should not have been taken from the corpus unless it be shown that the income was not sufficient to meet it. Defendant Rhoads, as executor of the estate of Mary E. Robinson, should therefore account for such item.

It is also set out in the bill that certain funds derived from so-called liquidation dividends paid on the stock of certain corporations as the amount paid to stockholders on liquidation of such corporations should be considered corpus and not income. Defendants urge that such funds are properly income from and not corpus of the estate. If, on accounting, it is shown that certain moneys were so received by the life tenant, such funds were not income but stood in the place of stock which constituted a portion of the principal of the estate and should be accounted for as such.

It is also contended by defendants that as to certain stocks of twenty-five corporations which the life tenant, while executrix, reported to the county court as having been taken by herself as beneficiary under the will, which report was approved on the 12th of December, 1904, such stocks became her own property, and that the order of the court approving her report in that regard is *res judicata* of the question whether the stocks became her separate property or were a part of the corpus of the estate. Her report referred to set out that in pursuance of the terms of

the will she had "taken in her personal and individual capacity in her own right, control of various stocks, as follows:" (Thereafter setting out certain shares of stock in twenty-five specified corporations.) It will be observed, however, that these stocks were by this report shown to have been taken by her as legatee under the will. She therefore took them as life tenant and had no power to take them to herself in any other capacity. Regardless of what effect, if any, might be ascribed to the order of the county court approving her report, she had nothing more than the life interest in these stocks. That interest did not differ from the interest which she had in the balance of the corpus of the estate. We are of the opinion, therefore, that her executor should account for these stocks, or proceeds thereof if sold, subject to the disposition or investment thereof which she was empowered to make under the will, and excluding from such accounting any income arising from such stocks, or losses sustained on re-investments of the proceeds if sold.

The defendant Franklin K. Rhoads argues that he is not liable as an individual to account personally for his acts and doings as the agent of the life tenant. The bill contains allegations charging that a fiduciary relationship existed between him and Mary E. Robinson. The evidence shows that he was her agent and assisted in the direction and management of her estate. It does not show that he procured any personal advantage which was used to the detriment of the estate or that he received any benefit from that relationship other than compensation for services rendered, amounting, as we have said, to something over $79,000, or that he alone, and not she, determined the disposition and management of the estate. He is liable to account as her executor and as her agent, but in the absence of a showing in the record of acts on his part beyond the scope of such agency there can be no duty on his

part to account in any capacity other than those of agent and executor.

Defendants argue, on their assignments of error, that Mary E. Robinson had full power to dispose of the entire corpus of the estate by will, except as to the items in the second, third, fourth and eighth clauses of the will, as to which bequests and devise they concede she had no power to dispose of the fee. As we have seen, she died leaving a will, in which, after making certain bequests, she bequeathed and devised the residue of her estate to certain of her relatives, who are defendants to this proceeding. Under the language of her husband's will she did not have power to make disposition of the corpus by will, and cases cited by defendants in support of the contention that she had such power do not apply. It may be further observed that there is nothing in her will to indicate that she was disposing of any part of the corpus of her husband's estate. She had at the time of her death an estate of her own, which passed by her will. In the absence of any language of that will indicating that she was disposing of the corpus of her husband's estate it is clear that she did not attempt to do so, and such principal of the estate as remained at her death passed to the devisees and legatees under the ninth to fourteenth clauses, inclusive, of his will, under the language, "all the rest, residue and remainder of my estate of every kind and character which may then remain," and the further language appearing in the fourteenth clause, "rest, residue and remainder of my estate of every kind and character not heretofore by my said wife used and disposed of as provided in clause fifth of this will." Such property the complainant, as executor of the will of James F. Robinson, is entitled to receive for the benefit of the legatees and devisees named in those clauses of Robinson's will.

Numerous cases are cited by the parties seeking to sustain their contentions differing from the conclusions reached by this court, but examination of them discloses that they

do not require or persuade an agreement with such contentions. It would unduly lengthen this opinion to analyze them here, for, as stated, the construction of a will must depend primarily on the language used by the testator, which must prevail if it be consistent with settled rules of law. *Wardner* v. *Baptist Memorial Board,* 232 Ill. 606; *Bradsby* v. *Wallace,* 202 id. 239.

The decree of the circuit court, in so far as it does not conform to this opinion, is reversed and the cause is remanded to that court, with directions to enter a decree in conformity with the views herein expressed, and for an accounting.
  *Reversed and remanded, with directions.*