ESTATE OF JOSEPH G. GOKEY, DECEASED, MILDRED A. GOKEY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MILDRED A. GOKEY, TRANSFEREE AND TRUSTEE OF THE JOSEPH G. GOKEY REVOCABLE TRUST (CREATED JANUARY 3, 1967) AND THE FIRST NATIONAL BANK OF CHICAGO, TRANSFEREE AND TRUSTEE OF THE JOSEPH G. GOKEY REVOCABLE TRUST (CREATED JANUARY 3, 1967), PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 607–74, 5698–74. Filed July 30, 1979.

*John H. Thompson, E. Robert Gordon,* and *Charles H. Wiggins, Jr.,* for the petitioners.
*Paul G. Topolka,* for the respondent.

WILES, *Judge:* Respondent determined a $160,502.94 deficiency in the Federal estate tax of Joseph G. Gokey,[1] and further determined that trustees Mildred A. Gokey and the First

---

[1]Respondent would allow additional credit for State death tax based upon the increase in value of the estate if payment is substantiated.

National Bank of Chicago were liable for the same amount under section 6901[2] as transferees of the assets of the Estate of Joseph G. Gokey. After concessions, the two issues are whether the value of two irrevocable inter vivos trusts created by decedent for the benefit of two of his minor children is includable in his gross estate under section 2036, and, if so, what is the value of the children's trusts' one-third remainder interests in a trust decedent created for the benefit of Mildred A. Gokey.

## FINDINGS OF FACT

Some facts were stipulated and are found accordingly.

Joseph G. Gokey (hereinafter decedent) resided in Illinois prior to his death on October 20, 1969. Petitioner Mildred A. Gokey (hereinafter Mrs. Gokey), his wife and executor of his estate, resided in Freeport, Ill., at the time she filed her individual petition in docket No. 607–74 and a joint petition with the First National Bank of Chicago (hereinafter First National) in docket No. 5698–74. First National, an Illinois corporation, maintained its principal office and place of business in Chicago, Ill., when it filed the joint petition with Mrs. Gokey.

Decedent and Mrs. Gokey had three children; Bridget, Gretchen, and Patrick, who were born on June 30, 1951, August 21, 1954, and January 13, 1956, respectively. On decedent's date of death, Bridget, Gretchen, and Patrick were 18, 15, and 13 years old, respectively.

On October 1, 1961, decedent, then 57, executed a trust agreement creating, in part, separate irrevocable trusts for the benefit of Gretchen and Patrick, then 7 and 5. Mrs. Gokey was the sole trustee of both trusts through decedent's date of death. The relevant portion of that trust agreement provides:

*Section 2:* Until each beneficiary becomes twenty-one (21) years of age, the Trustee shall use such part or all of the net income of his or her trust for the support, care, welfare, and education of the beneficiary thereof, payments from such net income to be made to such beneficiary or in such other manner as the Trustee deems to be in the best interest of the beneficiary, and any unused income shall be accumulated and added to the principal of such beneficiary's trust. After each beneficiary becomes twenty-one (21) years of age, the Trustee shall pay to him or her, in convenient installments, the entire

---

[2]Statutory references are to the Internal Revenue Code of 1954, as amended.

net income of his or her trust. In the Trustee's discretion, said income payments may be supplemented at any time with payments of principal from a beneficiary's share whenever the Trustee deems any such payments necessary for the support, care, welfare, or education of the beneficiary thereof.

On November 4, 1969, Mrs. Gokey appointed First National as cotrustee of the children's trusts and on December 15, 1969, it accepted. At the decedent's death and the alternate valuation date, Gretchen's trust contained assets, excluding any remainder interests, valued at $398,960.74, of which $8,944.49 was cash. On the same dates, Patrick's trust contained assets, excluding any remainder interests, valued at $398,722.92, of which $8,706.67 was cash.

Gretchen's trust reported total income of $15,728.27, $15,701.61, and $16,092.75 for 1971, 1972, and 1973, respectively. Subsequent to the appointment of First National as cotrustee, her trust income was used to pay education expenses, professional fees, and Federal and State income taxes. Part of the income was transferred to another bank account to the credit of Mrs. Gokey as guardian for Gretchen. Gretchen reported gross income from her trust of $15,445, $12,316, $13,783, and $13,977 for 1970, 1971, 1972, and 1973, respectively.

Patrick's trust reported total income of $15,728.27, $15,701.61, and $16,092.75 in 1971, 1972, and 1973, respectively. The income was utilized in a manner similar to that of Gretchen's trust income. Patrick reported gross income from his trust of $15,132, $12,316, $13,784, and $13,977 for 1970, 1971, 1972, and 1973, respectively.

From December 15, 1969, the date First National accepted appointment as cotrustee of Gretchen's and Patrick's trusts, to December 13, 1973, no trust income was ever accumulated and added to the principal of these trusts.

In the same October 1, 1961, trust agreement wherein he created a separate irrevocable inter vivos trust for the benefit of Gretchen and Patrick, decedent also created an irrevocable inter vivos trust for the benefit of Mrs. Gokey. Mrs. Gokey's trust provided her with a life estate with a one-third remainder interest upon her death to each of the trusts for the benefit of Gretchen and Patrick. The relevant portions of the trust agreement are as follows:

## ARTICLE I

### Disposition of Income and Principal

*Section 1:* Except as hereinafter provided during the joint lifetimes of the Grantor and MILDRED A. GOKEY, the net income of the trust estate shall be accumulated and added to principal. Upon the death of the Grantor, and if MILDRED A. GOKEY survives him, the net income of the trust estate shall be paid in convenient installments to the Grantor's wife, MILDRED A. GOKEY so long as she lives. In the event and at any time that a corporate Trustee is acting as a Co-Trustee or as sole Trustee as hereinafter provided, such corporate Trustee may in its discretion utilize income or principal for the benefit of MILDRED A. GOKEY if it deems such use necessary for her care, comfort, support or welfare.

*Section 2:* Upon the death of MILDRED A. GOKEY the trust estate shall terminate and the assets then held by the Trustee shall be distributed and transferred to the then acting Trustee of that certain Trust Agreement created by the Grantor on this 1st day of October, 1961, for the benefit of BRIDGET GAIL GOKEY, GRETCHEN ELIZABETH GOKEY and PATRICK KILLIAN GOKEY, such assets to be thereafter managed, administered and distributed in the same manner as the other assets held by such Trustee.

## ARTICLE II

### Authority and Powers of the Trustee
### Relative to Administration Matters

*Section 1:* * * *

(b) No payment to any beneficiary hereunder shall be anticipated, pledged, or hypothecated by such beneficiary nor shall any portion of either income or principal be taken for any obligation of such beneficiary or be liable to be seized upon execution, attachment or any legal or equitable process whatsoever.

First National accepted appointment as cotrustee over Mrs. Gokey's trust on December 15, 1969.

Decedent's estate tax return did not include any portion of the value of assets in the irrevocable trusts created on October 1, 1961, for the benefit of Gretchen, Patrick, and Mrs. Gokey. Respondent determined under section 2036 that the entire value of the assets in Gretchen's and Patrick's trusts was includable in decedent's gross estate. In addition, he determined that the assets in each of the children's trusts included a one-third remainder interest valued at $66,245.78.

Mrs. Gokey and First National, trustees of the Joseph G. Gokey Revocable Trust (created January 3, 1967), agree that they are transferees within the meaning of section 6324 and section 6901 by reason of the receipt of the assets of that trust.

## OPINION

The first issue is whether decedent retained the possession or enjoyment of, or the right to the income from, property transferred by him to irrevocable trusts for the benefit of Gretchen and Patrick. If so, the value of the property in those trusts is properly includable in decedent's gross estate under section 2036. The resolution of this issue depends upon whether, within the meaning of section 20.2036–1(b)(2), Estate Tax Regs., the income or property of the trusts was to be applied toward the discharge of the decedent's legal obligation to support Gretchen and Patrick during his lifetime.

Respondent contends that under Illinois law, decedent was under a legal duty to support his minor children, Gretchen and Patrick; that the terms of the children's trusts clearly require the trustees to use the trusts' income and property for their support; and that, therefore, the value of the trust property is includable in decedent's gross estate.

Petitioners do not dispute decedent's obligation to support Gretchen and Patrick under Illinois law; however, they contend that the use of the property or income therefrom for the children's support was within the unrestricted discretion of the trustees; that even if trusts did not give the trustees any discretion in this matter, the decedent nevertheless intended to grant them this discretion; that the use of the term "welfare" in the trusts creates an unascertainable standard which, even if ascertainable, is much broader than the standard for support; and that, therefore, the value of the trust property is not includable in decedent's gross estate. We agree with respondent on this issue.

Respondent relies upon section 20.2036–1(b)(2), Estate Tax Regs., which states that the use, possession, right to the income, or other enjoyment of the transferred property is considered as having been retained by or reserved to the decedent within the meaning of section 2036(a)(1) to the extent that the use, possession, right to the income, or other enjoyment *is to be applied* toward the discharge of a legal obligation of decedent which includes an obligation to support a dependent. "Is to be applied" is not to be read as "may be applied," which exists where an independent trustee is vested with discretion over distributions. *Estate of Mitchell v. Commissioner*, 55 T.C. 576, 580 (1970). This creates a factual question as to whether the income

from the trust property must be restricted or confined to fulfilling the settlor's obligation to support his dependents. *Estate of Lee v. Commissioner*, 33 T.C. 1064, 1067 (1960).

We believe the language of the children's trusts found in section 2 of the 1961 trust agreement which relates "shall use such part or all of the net income * * * for the support, care, welfare, and education of the beneficiary" clearly manifests decedent's intent to require the trustees to apply the income for the stated purpose. In our view, it is impossible to construe the instrument as one which gives the trustees discretion as to whether or not income shall be used for "support, care, welfare, and education." That standard completely controls the application of the trusts' funds. If those needs exceed the trusts' income, principal may be utilized. If those needs do not absorb all the trusts' income, the remaining income is accumulated and added to principal. Moreover, the section 2 phrase "payments from such net income to be made to such beneficiary or in such other manner as the Trustee deems to be in the best interest of the beneficiary" does not alter our interpretation. Clearly, this phrase only grants the trustee discretion in the method of payment adopted. Since we find decedent's intent clearly expressed in the trust instrument, we need not look beyond the four corners of the instrument to determine intent.

Petitioners next argue that the use of the word "welfare" within the phrase "the Trustee shall use such part or all of the net income of his or her trust for the support, care, welfare, and education of the beneficiary thereof" in section 2 of the 1961 trust instrument, gives the trustee authority to make nonsupport expenditures which, in turn, violates the "is to be applied" language of section 20.2036–1(b)(2), Estate Tax Regs. They support this theory by arguing that the standard "support, care, welfare, and education" is not ascertainable under, among others, sections 2036(a)(2) and 2041; and even if ascertainable, "welfare" is broader than "support" under Illinois law.

In determining whether "support, care, welfare, and education" is subject to an ascertainable external standard, we must rely upon Illinois law. *Estate of Budd v. Commissioner*, 49 T.C. 468, 474 (1968); *Estate of Pardee v. Commissioner*, 49 T.C. 140, 144 (1967). In *Estate of Wood v. Commissioner*, 39 T.C. 919, 923–924 (1963), we held that the phrase "support, maintenance, welfare, and comfort" was subject to an ascertainable standard:

We think that these four somewhat overlapping nouns were intended in the aggregate to describe the life beneficiary's standard of living in all its aspects * * *

Admittedly, the words "support," and "maintenance" are regarded as referable to a standard of living, and the addition of the naked words "comfort" and "welfare" in the context of the instrument before us merely rounds out the standard of living concept.

In *Estate of Bell v. Commissioner*, 66 T.C. 729, 734–735 (1976), we found that the phrase "well being and maintenance in health and comfort" was subject to an ascertainable standard in Illinois:

Although providing a modicum of discretion to the trustees, this language created a standard enforceable in a court of equity. Under Illinois law, a court of equity would look to the beneficiary's accustomed living standard in compelling compliance by the trustees, either to require income distributions for the stated purposes or to restrain distributions for unauthorized purposes. *In Re Whitman*, 22 Ill. 511 (1859) ("support, education, and maintenance"); *French v. Northern Trust Co.*, 197 Ill. 30, 64 N.E. 105, 106 (1902) ("properly maintained and comfortably provided for out of such property"); *Burke v. Burke*, 259 Ill. 262, 102 N.E. 293, 294 (1913) ("the comforts and necessities of life").

We similarly believe that under Illinois law, a court of equity would look to Gretchen's and Patrick's accustomed living standard in compelling compliance by the trustee to require income distributions for the stated purposes. As a result, we find that the terms "support, care, welfare, and education," when viewed in the aggregate, were intended to describe the children's standard of living and are, therefore, subject to an external ascertainable standard. See *Estate of Wood v. Commissioner, supra; Leopold v. United States*, 510 F.2d 617, 620 (9th Cir. 1975). Having found that the phrase in the aggregate created an ascertainable standard requiring the trustee to make expenditures for the children's accustomed living standard, we must reject petitioners' argument that the term "welfare" in the phrase allows the trustee to make nonsupport payments because "welfare" is broader than "support" under Illinois law.

Thus, it only remains for us to decide whether, under Illinois law, support is synonymous, for this purpose, with accustomed standard of living. In *Rock Island Bank & Trust Co. v. Rhoads*, 353 Ill. 131, 187 N.E. 139, 144 (1933), the Illinois Supreme Court stated: "The word 'comfort' must be construed as relating to her *support* and ease. * * * Had this clause provided only for her

comfort, it cannot be doubted that such would be a limitation * * * to maintain her in the *station in life to which she was accustomed.*" (Emphasis added.) We view this language as indicative that, under Illinois law, support is equivalent to accustomed standard of living. We are satisfied that the instrument before us provides an ascertainable standard under Illinois law. Accordingly, we find that decedent's gross estate includes the value of Gretchen's and Patrick's trusts since we find them to be support trusts within the meaning of section 2036(a)(1) and section 20.2036–1(b)(2), Estate Tax Regs.

Having determined that the value of the assets in the children's trusts is includable in decedent's gross estate, we must now determine the value of the assets in each trust; specifically, what is the value of the children's trusts' one-third remainder interests in a trust decedent created for the benefit of Mrs. Gokey in the October 1, 1961, trust agreement. Article I, sections 1 and 2 of that trust, grants Mrs. Gokey a life estate with remainder over equally to decedent's three children. Relying upon section 20.2031–7, Estate Tax Regs., respondent values Mrs. Gokey's life estate at $215,040.17 with a resulting remainder interest of $66,245.78 to each of the children. He then included $66,245.78, separately, in the value of assets held in Gretchen's and Patrick's trusts. Petitioners do not dispute the existence of the remainder interests, but, nevertheless, value them at zero because of the trustee's power of invasion in favor of Mrs. Gokey's life estate and the spendthrift clause prohibiting the children from alienating their remainder interests. Petitioners agree that if we hold for respondent on this issue, the proper value of each remainder interest is $66,245.78. Thus, we must only decide whether the value of each remainder interest is zero or $66,245.78. We find the value of each to be $66,245.78.

Petitioners' argument essentially suggests that under the "willing buyer and seller test" of section 20.2031–1(b), Estate Tax Regs., the remainder interests have no value since no one would buy a remainder interest that could not be alienated because of a spendthrift provision or a remainder interest subject to a power of invasion of principal in favor of the life tenant. This argument is without merit.

Valuation questions are primarily factual (*McGuire v. Commissioner*, 44 T.C. 801, 812 (1965)), and although alienability and powers of invasion affect value, we do not believe they destroy it

as a matter of law. In *United States v. Simmons*, 346 F.2d 213, 216–217 (5th Cir. 1965), the court found that even a tax refund claim which could not be lawfully sold or assigned because of a Federal anti-assignment statute, had some value: "The 'willing buyer and seller' are a *hypothetical* buyer and seller having a reasonable knowledge of relevant facts." (Emphasis added.) With regard to petitioners' second point, we do not question the difficulties associated with valuing an interest subject to a power of invasion. However, life estates coupled with a power to invade have been valued in the past. *Lockard v. Commissioner*, 7 T.C. 1151, 1154–1155 (1946), affd. 166 F.2d 409 (1st Cir. 1948); *Estate of Alexander v. Commissioner*, 25 T.C. 600, 611 (1955). Moreover, the fact that this power of invasion is limited by the ascertainable standard "care, comfort, support or welfare" relating to Mrs. Gokey's accustomed standard of living assists in determining a value for her life estate interest. See *Newton Trust Co. v. Commissioner*, 160 F.2d 175, 178–179 (1st Cir. 1947). Since we have already found that the phrase "support, care, welfare, and education" constituted an ascertainable standard under Illinois law, we believe this standard is similarly ascertainable, since only "comfort" is substituted for "education" and *Rock Island Bank & Trust Co. v. Rhoads, supra,* held that comfort means support. Of course, if the life estate may be valued, so may the remainder interests. Accordingly, we find that, under the record before us, the remainder interests have some value. As a result, pursuant to the agreement of the parties and petitioners' burden of proof to overcome the correctness of respondent's determined value, we find the value of Gretchen's and Patrick's remainder interests to be $66,245.78 each. *Welch v. Helvering*, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

We have considered the parties' other arguments and find them unpersuasive.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

☆ U.S. Government Printing Office: 1979—261–137/24