T.C. Memo. 2011-172

UNITED STATES TAX COURT

ESTATE OF ANN R. CHANCELLOR, DECEASED, MARY ANN C. WALKER,
EXECUTRIX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7973-09.                    Filed July 14, 2011.

Harris H. Barnes, III, for petitioner.

John F. Driscoll, for respondent.

MEMORANDUM OPINION

THORNTON, Judge:  Respondent determined a $716,013 Federal estate tax deficiency.  After various concessions by respondent, the sole issue for decision is whether pursuant to section 2041 the gross estate of Ann R. Chancellor (decedent) must include the value of the assets of a trust of which she was a beneficiary and

trustee.[1]  She died November 16, 2004, and at the time of her death was domiciled in Mississippi.  When the petition was filed, Mary Ann C. Walker, executrix, resided in Mississippi.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122.  The stipulated facts are found accordingly.

Decedent's husband, Lester M. Chancellor (Mr. Chancellor), predeceased her in 1989.  His will left her most of his estate outright, except for property placed in the Lester M. Chancellor Unified Credit Trust (the trust), as established by the will.  The trust's cotrustees were decedent and Citizens National Bank of Meridian, Mississippi (the bank).

Under the terms of the trust as stated in the will, during decedent's lifetime the cotrustees were authorized to apportion trust income among decedent, Mr. Chancellor's children, and Mr. Chancellor's grandchildren (the beneficiaries) "in accordance with their respective needs."  The cotrustees were also given the

> right and power to invade the corpus of the trust and to use such part thereof and if necessary, all of it, for the necessary maintenance, education, health care, sustenance, welfare or other appropriate expenditures needed by * * * [Mr. Chancellor's] wife and the other beneficiaries of this trust taking into consideration the standard of living to which they are accustomed and any income available to them from other sources.

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code as in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Mr. Chancellor's will directed that the trust should be funded with assets equal in value to the maximum amount that could pass free of estate tax upon Mr. Chancellor's death. The will further stated that it was Mr. Chancellor's "intention to convey by this Article of my will the maximum portion of my estate which, at the time of my death, shall be exempt from the federal transfer tax."

On June 5, 1992, the trust was established in the bank as the "Lester M. Chancellor Unified Credit Trust". On that same date the trust was opened and funded with listed stocks, and the bank and decedent began serving as cotrustees. From the time the trust was opened until her death, decedent never requested or received any trust corpus.

Decedent's estate's estate tax return showed a total gross estate of $1,383,405. This amount excluded the value of the trust's assets, which was $1,205,034 at the time of decedent's death. In the notice of deficiency respondent determined that decedent's gross estate includes the fair market value of the trust's assets as of the date of her death because decedent had a general power of appointment over them.

## Discussion

The parties have stipulated that the dispute in this case is whether decedent's power to invade the corpus of the trust

requires the value of the trust assets to be included in her gross estate under section 2041.[2]

A. General Powers of Appointment--General Rules

Section 2001 imposes a tax on the transfer of the taxable estate of all persons who are citizens or residents of the United States at the time of death.  The amount of the tax depends on the size of the taxable estate, which is equal to the value of the gross estate less specified deductions.  See secs. 2001(b), 2051.  The gross estate includes property with respect to which the decedent had a general power of appointment created after October 21, 1942.  Sec. 2041(a)(2).  Section 2041(b)(1) generally defines a general power of appointment as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate".

B. The Ascertainable Requirement Exception

A power to consume, invade, or appropriate trust income, corpus, or both for the decedent's benefit is not deemed a general power of appointment if it is "limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent".  Sec. 2041(b)(1)(A);

---

[2]Pursuant to this stipulation we deem respondent to have waived or conceded any issue as to whether decedent's power as a cotrustee to apportion trust income among herself and other trust beneficiaries "according to their respective needs" required the value of the trust assets to be included in her gross estate under sec. 2041.

- 5 -

sec. 20.2041-1(c)(2), Estate Tax Regs.  This exception entails two requirements:  First, the power of appointment must be limited by an ascertainable standard; and second, that standard must relate solely to the decedent's health, education, support, or maintenance.  Estate of Little v. Commissioner, 87 T.C. 599, 601 (1986); Estate of Strauss v. Commissioner, T.C. Memo. 1995-248.

1.  The Requirement That the Power Be Limited by an
    Ascertainable Standard

Mr. Chancellor's will gave decedent power to invade trust corpus for "necessary maintenance, education, health care, sustenance, welfare or other appropriate expenditures needed by * * * [Mr. Chancellor's] wife and the other beneficiaries * * * taking into consideration the standard of living to which they are accustomed".  In his surreply brief respondent concedes that the will's use of the phrase "taking into consideration the standard of living to which * * * [the will beneficiaries] are accustomed" satisfies the first requirement, that the power of appointment be governed by an ascertainable standard.

2.  The Requirement That the Power Relate Solely to Health,
    Education, Support, or Maintenance

Respondent contends that decedent's power fails the second requirement of section 2041(b)(1)(A) because the terms "welfare or other appropriate expenditures" fall outside the scope of the requisite purposes.  A power conforms to the requisite purposes

if "the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them)." Sec. 20.2041-1(c)(2), Estate Tax Regs.  We look to applicable State law--Mississippi law in this case--to determine the legal rights and interests that decedent possessed under the trust. Morgan v. Commissioner, 309 U.S. 78, 80, amended on denial of rehearing 309 U.S. 626 (1940); Estate of Little v. Commissioner, supra at 601.

a.  "Necessary * * * Welfare"

Some cases hold that a power that permits invasion of trust corpus for purposes including "welfare" is not limited by an ascertainable standard related solely to health, education, support, or maintenance.  For instance, in Lehman v. United States, 448 F.2d 1318, 1319 (5th Cir. 1971), the decedent was given broad power to consume trust corpus whenever, in her own discretion, she deemed the trust income "insufficient for her support, maintenance, comfort, and welfare."  The Court of Appeals agreed with the Commissioner that under Texas law this power was not "confined within legal limitations sufficiently definite to exempt it from the statutory definition of a general power."  Id. at 1320.  And in Estate of Jones v. Commissioner, 56 T.C. 35, 37-41 (1971), affd. 474 F.2d 1338 (3d Cir. 1973), this Court held that a power to consume trust corpus "in situations

affecting * * * [the decedent's] care, maintenance, health, welfare and well-being" was not limited to an "ascertainable power for her health, support, or maintenance."  In support of their holdings each of these cases cited a regulation which states:  "A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard."  Sec. 20.2041-1(c)(2), Estate Tax Regs.

Lehman and Estate of Jones, however, do not involve words of limitation as appear in Mr. Chancellor's will.  As previously discussed, respondent concedes that the power set out in Mr. Chancellor's will satisfies the first requirement of the section 2041(b)(1)(A) exception.  The question, then, which is not squarely addressed by the above-cited authorities, is whether "necessary * * * welfare or other appropriate expenditures", as accompanied by the additional words of limitation in Mr. Chancellor's will, provides a broader standard than "health, education, support, or maintenance" under section 2041(b)(1)(A).

In Estate of Strauss v. Commissioner, supra, this Court held that a power that was exercisable for the decedent's "care and comfort, considering his standard of living" as of the date of the trustor's death satisfied both requirements of the section 2041(b)(1)(A) exception.  This Court rejected the Commissioner's contention that "comfort", as interpreted by applicable Illinois law, would include items not within the meaning of "health,

education, support, or maintenance". The Court noted that under the regulations "the words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life." Id. (quoting section 20.2041-1(c)(2), Estate Tax Regs.). The Court concluded that under Illinois caselaw, "comfort" would be interpreted "so that the life tenant was maintained 'in the station in life to which she was accustomed.'" Id. (quoting Rock Island Bank & Trust Co. v. Rhoads, 187 N.E. 139, 144 (Ill. 1933)). The Court found little difference between this standard and "support in his accustomed manner of living", which is an acceptable standard under the regulations. Id. (quoting sec. 20.2041-1(c)(2), Estate Tax Regs.). The Court stated: "This leads us to conclude that a standard designed to maintain the decedent in his station in life does relate to the decedent's health, education, support, or maintenance, as interpreted by the regulations." Id.

The Mississippi Supreme Court has endorsed the view that the word "comfort" in a trust document is intended to maintain the beneficiary's standard of living as existed at the trust's creation. Gulf Natl. Bank v. Sturtevant, 511 So. 2d 936, 938 (Miss. 1987). We have discovered no case in which the Mississippi Supreme Court has construed the term "welfare" as used in a trust document. This term was addressed, however, in Blodget v. Delaney, 201 F.2d 589, 593 (1st Cir. 1953), which the

Mississippi Supreme Court cited with approval in <u>Gulf Natl. Bank v. Sturtevant</u>, <u>supra</u> at 938.

In <u>Blodget v. Delaney</u>, <u>supra</u> at 593, the Court of Appeals observed that "the words 'comfort and welfare' * * * do not have such sweeping subjective connotations" as the word "happiness". The Court of Appeals stated that in some circumstances "welfare" might cover more "elements of the subjective" than "comfort" but concluded that "it certainly is not as broad in its subjective sweep as 'happiness,' 'desire,' or 'use and benefit.' Surely it cannot possibly be construed to cover whim or caprice, or even to cover an invasion of principal by the trustee to satisfy the life beneficiary's wish to make a gift." <u>Id.</u> The Court of Appeals concluded that under applicable Massachusetts law, taking into account the life beneficiary's circumstances and the trustee's duty to act in good faith for the best interests of both the life beneficiary and the remainder interest, the Massachusetts Supreme Court would equate the meaning of "welfare" as used in the will "not so much to the meaning of 'happiness,' 'desire' or 'use and benefit', as to 'maintenance' or 'support.' That is to say, we think that court * * * would hold that 'comfort and welfare' * * * meant the physical comfort and state of physical well-being to which the life beneficiary had become accustomed". <u>Id.</u> at 594; see also <u>In re Buell's Estate</u>, 66 N.Y.S.2d 180 (1946) (interpreting "welfare" under New York law as providing for

"physical comfort and well-being" in accordance with the beneficiary's accustomed standard of living).

We believe that the Mississippi Supreme Court would similarly construe the term "welfare" as used in Mr. Chancellor's will as part of the phrase "necessary * * * welfare * * * needed by * * * [Mr. Chancellor's] wife and the other beneficiaries of this trust taking into consideration the standard of living to which they are accustomed". In fact, taken in toto, with the seemingly overlapping qualifiers "necessary" and "needed" bookending the list of specified items which includes "welfare" and which is further qualified by express reference to the beneficiaries' accustomed standard of living, Mr. Chancellor's will makes at least as clear as the will considered in Blodget v. Delaney, supra at 593-594, that "welfare" was intended to refer to decedent's and the other beneficiaries' maintenance and support according to their accustomed standards of living. See Amoskeag Trust Co. v. Wentworth, 111 A.2d 198, 200 (N.H. 1955) (stating that a testatrix's "adoption of necessity and need as a criterion of the nature of the payments she intended rules out those which might contribute to the beneficiary's happiness, contentment, and peace of mind regardless of his need for them and limits payments to those reasonably necessary in view of all the circumstances", taking into consideration "the manner and

style to which he was accustomed to live at or about the time of the death of the testatrix" (citations omitted)).

　　b.　"Other Appropriate Expenditures Needed" Et Cetera

For similar reasons, we do not believe that the phrase "other appropriate expenditures needed by * * * [Mr. Chancellor's] wife and the other beneficiaries of this trust taking into consideration the standard of living to which they are accustomed", preceded as it is by a list of "necessary" support-related purposes, was intended to permit decedent to invade trust corpus for other than support-related purposes as necessary to maintain her and the other beneficiaries' accustomed standard of living.  We agree with petitioner that the Mississippi Supreme Court would most likely apply the rule of ejusdem generis to construe the words "other appropriate expenditures needed", etc. as referring to expenditures that are akin to or of like character with the expressly enumerated items that precede this phrase in the will; i.e., "maintenance, education, health care, sustenance, welfare".[3]

---

　　[3]The rule of ejusdem generis is that "'where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.'"  Cole v. McDonald, 109 So. 2d 628, 637 (Miss. 1959) (quoting 59 C.J. 981); see Kan. City S. Ry. Co. v. McNamara, 817 F.2d 368, 372 n.5 (5th Cir. 1987); Estate of Short v. Commissioner, 68 T.C. 184, 193 n.6 (1977).  As the Mississippi Supreme Court stated long ago:

This rule, of course, excludes the suggestion that the

We are mindful that as an artificial rule of construction, ejusdem generis has "limited application" which must be exercised with caution and is only applicable when the intention of the testator is ambiguous.  Miller v. United States, 387 F.2d 866, 869 (3d Cir. 1968); see Morgan v. State, 44 So. 2d 45, 48-49 (Miss. 1950) (stating that the rule of ejusdem generis "has been universally applied with some degree of strictness" and is "only a rule of construction to aid in arriving at the true intention of a statute or contract").  But we disagree with respondent's assertion that "there is no ambiguity in the specific language at issue".  And we find implausible respondent's suggestion that Mr. Chancellor's will, which states that he intended to convey by the trust the largest portion of his estate that could be transferred free from estate tax, reflects the drafter's "affirmative and intentional decision" to exceed the scope of the purposes permitted under the section 2041(b)(1)(A) exception.

Respondent suggests that applying the rule of ejusdem generis would effectively render the words "other appropriate expenditures" meaningless and thereby violate the maxim that

mere use of general words is sufficient to indicate a purpose to include matters not ejusdem generis.  It is but the application of a principle that governs men in their usual intercourse, and applies language to the subject with which the speaker is dealing, and limits or expands the words used to accord to his understanding and intention.  [Leinkauf & Strauss v. Barnes, 5 So. 402, 404 (Miss. 1889).]

effect should be given to each and every word and phrase of a document.  See, e.g., <u>Malone v. Malone</u>, 379 So. 2d 926, 929 (Miss. 1980).  But such concerns loom even larger under respondent's construction of the will.  More particularly, if, as respondent seems to suggest, the power to invade corpus was ultimately intended to apply in all-encompassing fashion to any "appropriate expenditure", it would be pointless for Mr. Chancellor's will to have listed specified purposes ("necessary maintenance, education, health care, sustenance, welfare") that fall within the penumbra of "appropriate expenditures".  Cf. <u>Leinkauf & Strauss v. Barnes</u>, 5 So. 402, 405 (Miss. 1889) (overruling an objection to the application of the rule of ejusdem generis in construing a statute, stating "it would be useless to specify certain things as to which the statute should apply, if it was intended that it should apply to all other things, whether <u>ejusdem generis</u>, or of a totally distinct character.").

Respondent observes that the will's power of appointment language lists "other appropriate expenditures" in the disjunctive from the other listed purposes, seeming thereby to suggest that "other appropriate expenditures" must mean something apart from the other listed purposes.  Although we do not view the will's use of the preposition "or" as controlling one way or another, we observe that in other circumstances the Mississippi

Supreme Court, applying the rule of ejusdem generis, has construed "or" to mean "and".  Anderson v. City of Hattiesburg, 90 So. 163, 164 (Miss. 1922) (applying the rule of ejusdem generis to construe a city ordinance against exhibiting "any obscene, indecent, or immoral picture" as if it read "obscene, indecent, and immoral.").

C.  Conclusion

In the final analysis, we believe that the phrase "welfare or other appropriate expenditures needed by * * * [the beneficiaries] taking into account the standard of living to which they are accustomed", preceded as it is by a list of "necessary" support-related items, "merely rounds out the standard of living concept".  Estate of Wood v. Commissioner, 39 T.C. 919, 923-924 (1963) (holding that in a trust instrument authorizing invasion of trust corpus for the beneficiary's "support, maintenance, welfare, and comfort", the addition of the words "comfort" and "welfare" did not cause the instrument to fail the requirement of providing a reasonable standard for determining the extent to which charitable remainders might be depleted by power of invasion).

This conclusion, we believe, is consistent with Mr. Chancellor's intent as revealed in his will.  Although he left most of his estate to decedent outright, she was not the sole beneficiary of the trust; Mr. Chancellor's children and

grandchildren were also beneficiaries.  The cotrustees were authorized to invade trust corpus to make "necessary" support-related expenditures for any of these beneficiaries, "as needed", taking into account their accustomed standards of living. Consequently, this case is not governed by the rule, sometimes invoked by courts, that the power to invade principal should be construed broadly where the beneficiary is the main object of the testator's bounty.  See, e.g., <u>Doyle v. United States</u>, 358 F. Supp. 300, 308 (E.D. Pa. 1973).  To the contrary, we believe that to implement Mr. Chancellor's intent a Mississippi court would construe the power narrowly to authorize invasion of trust corpus only for support-related needs like those described in the will, so as to conserve trust assets to provide, to the extent possible and necessary, for all of the beneficiaries' support and maintenance during decedent's lifetime.

Accordingly, we conclude and hold that decedent's power of appointment was limited by an ascertainable standard relating solely to her health, education, support, or maintenance so as to meet the exception of section 2041(b)(1)(A).  Consequently, decedent's gross estate does not include the value of the trust assets.[4]

---

[4]In the light of this holding, it is unnecessary to address petitioner's alternative argument that pursuant to sec. 2041(b)(1)(C)(ii), decedent's power over the trust property was not a general power of appointment because she could exercise her power only in conjunction with the bank.

To reflect the foregoing and respondent's concessions,

<u>Decision will be entered</u>

<u>for petitioner</u>.